CLAYTON *v.* INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, & AGRICULTURAL IM-
PLEMENT WORKERS OF AMERICA, ET AL.

No. 80–5049.   Argued March 4, 1981—Decided May 26, 1981*

*Together with No. 80–54, *ITT Gilfillan, a Division of International
Telephone & Telegraph Corp.* v. *Clayton,* also on certiorari to the same
court.

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, and STEVENS, JJ., joined. POWELL, J., filed a dissenting opinion, in which BURGER, C. J., joined, *post,* p. 696. REHN-QUIST, J., filed a dissenting opinion, in which BURGER, C. J., and STEWART and POWELL, JJ., joined, *post,* p. 698.

*Everett F. Meiners* argued the cause and filed a brief for petitioner in No. 80–54. *John T. McTernan,* by appointment of the Court, 449 U. S. 1008, argued the cause for petitioner in No. 80–5049 and respondent in No. 80–54. With him on the briefs was *Elizabeth B. Spector.*

*M. Jay Whitman* argued the cause for respondents in No. 80–5049. With him on the brief were *John A. Fillion* and *Lawrence Rosenzweig.*†

JUSTICE BRENNAN delivered the opinion of the Court.

An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301 (a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185 (a). *Republic Steel Corp. v. Maddox,* 379 U. S. 650, 652–653 (1965); see *Hines* v. *Anchor Motor Freight, Inc.,* 424 U. S. 554, 563 (1976); *Vaca* v. *Sipes,*

---

†Briefs of *amici curiae* were filed by *J. Albert Woll, Laurence Gold,* and *Marsha Berzon* for the American Federation of Labor and Congress of Industrial Organizations; by *James C. Paras, Bruce A. Nelson, Thomas E. Wilson,* and *Stephen A. Bokat* for the Chamber of Commerce of the United States; and by *Wesley J. Fastiff* and *Kathleen M. Kelly* for Safeway Stores, Inc., et al.

386 U. S. 171, 184 (1967). The question presented by these cases is whether, and in what circumstances, an employee alleging that his union breached its duty of fair representation in processing his grievance, and that his employer breached the collective-bargaining agreement, must also attempt to exhaust the internal union appeals procedures established by his union's constitution before he may maintain his suit under § 301.

I

After eight years in the employ of ITT Gilfillan, Clifford E. Clayton, a member of the United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) and a shop steward of its Local 509, was dismissed for violating a plant rule prohibiting defined misbehavior. Pursuant to the mandatory grievance and arbitration procedure established by the collective-bargaining agreement between ITT and Local 509, Clayton asked his union representative to file a grievance on his behalf on the ground that his dismissal was not for just cause. The union investigated Clayton's charges, pursued his grievance through the third step of the grievance procedure, and made a timely request for arbitration.[1] It then withdrew the request, choosing not to proceed to arbitration. Clayton was notified of the union's decision after the time for requesting arbitration had expired.[2]

The UAW requires every union member "who feels aggrieved by any action, decision, or penalty imposed upon

---

[1] The collective-bargaining agreement between Local 509 and ITT Gilfillan establishes a four-step grievance procedure, with binding arbitration as the fourth step. Article IX of the agreement provides that if the union wishes to request arbitration, it must do so within 15 working days after completion of the third step of the grievance procedure. App. 31–36.

[2] Clayton was notified of the union's decision by a letter written by the International Representative responsible for servicing Local 509. *Id.*, at 78–79. Neither the union nor the employer contests Clayton's allegation that he received this letter more than 15 working days after completion of the third step of the grievance procedure. See *id.*, at 7; Tr. 88–99.

him" by the union to exhaust internal union appeals procedures before seeking redress from a "civil court or governmental agency." UAW Constitution, Art. 33, § 12. These procedures, established by Arts. 32 and 33 of the UAW Constitution and incorporated into Art. IV of Local 509's bylaws, direct the employee first to seek relief from the membership of his local. Art. 33, § 3. If not satisfied with the result obtained there, the employee may further appeal to the International Executive Board of the UAW, and eventually to either the Constitutional Convention Appeals Committee or to a Public Review Board composed of "impartial persons of good public repute" who are not members or employees of the union. Arts. 32, 33, §§ 3–11.

Clayton did not file a timely internal appeal from his local's decision not to seek arbitration of his grievance.[3] Instead, six months after the union's withdrawal of its request for arbitration, Clayton filed this action under § 301 (a) of the Labor Management Relations Act, 1947, 29 U. S. C. § 185 (a), in the District Court for the Central District of California. He alleged that the union had breached its duty of fair representation by arbitrarily refusing to pursue his grievance past the third step of the grievance procedure, and that the employer had breached the collective-bargaining agreement by discharging him without just cause.[4]

Both the union and the employer pleaded as an affirmative defense Clayton's failure to exhaust the internal union appeals procedures. App. 12, 18. The District Court sustained this defense, finding that Clayton had failed to exhaust the

---

[3] Under Art. 33, § 3, of the UAW Constitution, Clayton had 30 days from the date the union withdrew its request for arbitration to initiate the internal union appeals procedures.

[4] To prevail in an action under § 301 against either the employer or the union, an employee must ordinarily establish both that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement. *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554, 570–571 (1976).

internal appeals procedures; that those procedures were adequate as a matter of law; that Clayton had been advised of their existence; and that his failure to exhaust could not be excused as futile. Record 397–404. Accordingly, the court dismissed Clayton's suit against both the union and the employer.

The United States Court of Appeals for the Ninth Circuit affirmed the dismissal of Clayton's suit against the union and reversed the dismissal of his suit against the employer. 623 F. 2d 563 (1980). Focusing on the adequacy of the relief available under the internal union appeals procedures the Court of Appeals held that Clayton's failure to exhaust was fatal to his claim against the union, because by filing an internal appeal Clayton might have received money damages, the relief he sought in his § 301 suit against the union. *Id.,* at 566. However, the Court held that Clayton's failure to exhaust did not bar his suit against the employer, because the internal appeals procedures could not result in either reinstatement of his job, which was the relief Clayton sought from the employer under § 301, or in reactivation of his grievance. *Id.,* at 569–570.

In No. 80–5049, Clayton argues that his § 301 claim against the UAW and Local 509 should be allowed to proceed despite his failure to exhaust internal union procedures. In No. 80–54, ITT Gilfillan argues that if Clayton's failure to exhaust bars his suit against the union, it must also bar his suit against the employer.

The Courts of Appeals are divided over whether an employee should be required to exhaust internal union appeals procedures before bringing suit against a union or employer under § 301. Some hold that the employee's failure to exhaust internal union procedures may not be asserted as a defense by an employer.[5] Others permit the defense to be

---

[5] See, *e. g., Johnson* v. *General Motors,* 641 F. 2d 1075, 1083 (CA2 1981); *Geddes* v. *Chrysler Corp.,* 608 F. 2d 261, 264 (CA6 1979); *Petersen* v.

asserted by an employer if the internal appeals procedures could result in reactivation of the grievance.[6] With respect to a union, some courts hold that the employee's failure to exhaust is excused if union officials would be so hostile to an employee that he could not hope to obtain a fair hearing.[7] Others would also excuse the employee's failure to exhaust if the substantive relief available through the internal procedures would be less than that available in his § 301 action.[8]

We granted certiorari to resolve the conflict. 449 U. S. 950 (1980). We reverse the dismissal of Clayton's suit against the union and affirm the reversal of the dismissal of his suit against the employer. We hold that where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union.

## II

In *Republic Steel Corp.* v. *Maddox*, 379 U. S. 650 (1965), we were asked to decide whether an employee alleging a vio-

---

*Rath Packing Co.*, 461 F. 2d 312, 315 (CA8 1972); *Retana* v. *Apartment, Motel, Hotel and Elevator Operators Union*, 453 F. 2d 1018, 1027, n. 16 (CA9 1972).

[6] See, e. g., *Varra* v. *Dillon Companies, Inc.*, 615 F. 2d 1315, 1317–1318 (CA10 1980); *Baldini* v. *Local Union No. 1095*, 581 F. 2d 145, 150 (CA7 1978); *Winter* v. *Local Union No. 639*, 186 U. S. App. D. C. 315, 319–320, 569 F. 2d 146, 150–151 (1977); *Harrison* v. *Chrysler Corp.*, 558 F. 2d 1273, 1278 (CA7 1977).

[7] See, e. g., *Fizer* v. *Safeway Stores, Inc.*, 586 F. 2d 182, 183–184 (CA10 1978); *Winter* v. *Local Union No. 639, supra*, at 318, 569 F. 2d, at 149; *Imel* v. *Zohn Mfg. Co.*, 481 F. 2d 181, 184 (CA10 1973), cert. denied, 415 U. S. 915 (1974).

[8] See, e. g., *Tinsley* v. *United Parcel Service, Inc.*, 635 F. 2d 1288, 1290 (CA7 1980); *Geddes* v. *Chrysler Corp., supra*, at 264; *Baldini* v. *Local Union No. 1095, supra*, at 149; *Buzzard* v. *Local Lodge 1040*, 480 F. 2d 35, 41 (CA9 1973). These cases compare the relief available through internal procedures with the relief available *against the union* under § 301.

lation of the collective-bargaining agreement between his union and employer must attempt to exhaust exclusive contractual grievance and arbitration procedures before bringing suit under § 301 (a).[9]  In deciding that issue we looked to principles of federal common law.  See *Textile Workers* v. *Lincoln Mills*, 353 U. S. 448, 457 (1957).  Two considerations influenced our decision to require exhaustion.  First, Congress had "expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant."  379 U. S., at 653.[10] Second, a contrary rule, allowing an employee to bring suit under § 301 without attempting to exhaust the contractual grievance procedures, would "deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances."  *Ibid.*[11]  The

---

[9] Section 301 (a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185 (a), provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[10] Section 203 (d) of the Labor Management Relations Act, 61 Stat. 153, 29 U. S. C. § 173 (d), provides that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."

[11] We also noted that exhaustion would serve the interests of both the union and the employer:

"[It] complements the union's status as exclusive bargaining representative by permitting [the union] to participate actively in the continuing administration of the contract.  In addition, conscientious handling of grievance claims will enhance the union's prestige with employees.  Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees."  379 U. S., at 653.

Moreover, exhaustion would not adversely affect the employee:

"[I]t cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved em-

rule established by *Republic Steel* was thus intended to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of collective-bargaining agreements. See *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S., at 567, 570–571.

The contractual procedures we required the employee to exhaust in *Republic Steel* are significantly different from the procedures at issue here. In these cases, the Court is asked to require exhaustion of *internal* union procedures. These procedures are wholly a creation of the UAW Constitution. They were not bargained for by the employer and union and are nowhere mentioned in the collective-bargaining agreement that Clayton seeks to have judicially enforced.[12] Nonetheless, Clayton's employer and union contend that exhaustion of the UAW procedures, like exhaustion of contractual grievance and arbitration procedures, will further national labor policy and should be required as a matter of federal common law. Their argument, in brief, is that an exhaustion requirement will enable unions to regulate their internal affairs without undue judicial interference and that it will also promote the broader goal of encouraging private resolution of disputes arising out of a collective-bargaining agreement.

We do not agree that the policy of forestalling judicial interference with internal union affairs is applicable to these

---

ployee until the employee has attempted to implement the procedures and found them so." *Ibid.*

We concluded that since an employee bringing a § 301 claim is asserting rights created by a collective-bargaining agreement, he should also be required to pursue the dispute-resolution procedures created by that agreement. See *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S., at 562–563; *Vaca* v. *Sipes*, 386 U. S. 171, 184 (1967).

[12] Indeed, the parties concede that Clayton has exhausted the grievance and arbitration procedures that were expressly created by the collective-bargaining agreement.

cases.[13]   This policy has been strictly limited to disputes aris-
ing over *internal* union matters such as those involving
the interpretation and application of a union constitution.
As we stated in *NLRB* v. *Marine Workers,* 391 U. S. 418
(1968), the policy of deferring judicial consideration of inter-
nal union matters does not extend to issues "in the public
domain and beyond the internal affairs of the union." *Id.,*
at 426, n. 8.[14]   Here, Clayton's dispute against his union is
based upon an alleged breach of the union's duty of fair
representation.   This allegation raises issues rooted in statu-
tory policies extending far beyond internal union interests.

---

[13] This policy has its statutory roots in § 101 (a) (4) of the Landrum-
Griffin Act, 73 Stat. 522, 29 U. S. C. § 411 (a) (4), which is part of the
subchapter of that Act entitled "Bill of Rights of Members of Labor
Organizations."   Section 101 (a) (4) provides:

"No labor organization shall limit the right of any member thereof to
institute an action in any court, . . . *Provided,* That any such member
may be required to exhaust reasonable hearing procedures (but not to ex-
ceed a four-month lapse of time) within such organization, before institu-
ting legal . . . proceedings against such organizations or any officer
thereof . . . ."

[14] In *NLRB* v. *Marine Workers,* we held that respondent union could
not discipline one of its members for failing to exhaust internal appeals
procedures before filing an unfair labor practice charge with the National
Labor Relations Board, because the unfair labor practices charge was "in
the public domain and beyond the internal affairs of the union." 391
U. S., at 425.   "A proceeding by the [NLRB] is not to adjudicate private
rights but to effectuate a public policy," and "[a]ny coercion used to dis-
courage, retard, or defeat . . . access [to those proceedings] is beyond the
legitimate interests of a labor organization." *Id.,* at 424.   Moreover,
"[t]here cannot be any justification to make the public processes wait until
the union member exhausts internal procedures plainly inadequate to deal
with all phases of the complex problem concerning employer, union, and
employee member.   If the member becomes exhausted, instead of the
remedies, the issues of public policy are never reached and an airing of the
grievance never had." *Id.,* at 425.   See also 105 Cong. Rec. 17899 (1959)
(remarks of Sen. Kennedy) (§ 101 (a) (4) not intended "to eliminate ex-
isting grievance procedures established by union constitutions for redress
of alleged violations of *their internal governing laws*").

See *United Parcel Service, Inc.* v. *Mitchell, ante,* at 66, and n. 2 (STEWART, J., concurring); *Hines* v. *Anchor Motor Freight, Inc., supra,* at 562; *Vaca* v. *Sipes,* 386 U. S., at 182; *Humphrey* v. *Moore,* 375 U. S. 335 (1964).

Our analysis, then, focuses on that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over collective-bargaining agreements. Concededly, a requirement that aggrieved employees exhaust internal remedies might lead to nonjudicial resolution of some contractual grievances. For example, an employee who exhausts internal union procedures might decide not to pursue his § 301 action in court, either because the union offered him a favorable settlement, or because it demonstrated that his underlying contractual claim was without merit. However, we decline to impose a universal exhaustion requirement lest employees with meritorious § 301 claims be forced to exhaust themselves and their resources by submitting their claims to potentially lengthy internal union procedures that may not be adequate to redress their underlying grievances.

As we stated in *NLRB* v. *Marine Workers, supra,* at 426, and n. 8, courts have discretion to decide whether to require exhaustion of internal union procedures. In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

Clayton has not challenged the finding of the lower courts that the UAW internal appeals procedures are fair and reasonable. He concedes that he could have received an impar-

tial hearing on his claim had he exhausted the internal union procedures. See *Glover* v. *St. Louis-San Francisco R. Co.,* 393 U. S. 324, 330–331 (1969). Accordingly, our inquiry turns to the second factor, whether the relief available through the union's internal appeals procedures is adequate.

In his suit under § 301, Clayton seeks reinstatement from his employer and monetary relief from both his employer and his union.[15] Although, the UAW Constitution does not indicate on its face what relief is available through the internal union appeals procedures,[16] the parties have stipulated that the Public Review Board can award backpay in an appropriate case, Tr. 35–36, and the two decisions of the Public Review Board reprinted in the joint appendix both resulted in awards of backpay. App. 89–109. It is clear, then, that at least some monetary relief may be obtained through the internal appeals procedures.[17]

---

[15] App. 8–9. Reinstatement is available only from the employer, because the union has no power to order reinstatement under the collective-bargaining agreement. Damages, however, can be assessed against both the employer and the union. As we stated in *Vaca* v. *Sipes,* 386 U. S., at 197–198, an employee who establishes that the union breached its duty of fair representation in processing his grievance, and that the employer breached the collective-bargaining agreement, may be entitled to an award of damages "apportion[ed] . . . between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer."

[16] The UAW Constitution states only that the Constitution Convention Appeals Committee has "the authority to consider and decide all appeals submitted to it," Art. 33, § 8, and that the Public Review Board has the "authority and duty to make final and binding decisions on all cases appealed to it," Art. 32, § 3 (b), and to "dispose of all facets of the appeal." Art. 33, § 11.

[17] The record does not indicate whether this monetary relief includes backpay only, or whether it also may include prospective monetary relief

It is equally clear that the union can neither reinstate Clayton in his job, see n. 15, *supra,* nor reactivate his grievance. Article IX of the collective-bargaining agreement between Local 509 and ITT Gilfillan provides that the union may obtain arbitration of a grievance only if it gives "notice . . . to the Company in writing within fifteen (15) working days after the date of the Company's decision at Step 3 of the Grievance Procedure." By the time Clayton learned of his union's decision not to pursue the grievance to arbitration, this 15-day time limit had expired. See n. 2, *supra.* Accordingly, the union could not have demanded arbitration even if the internal appeal had shown Clayton's claim to be meritorious. The union was bound by its earlier decision not to pursue Clayton's grievance past the third stage of the grievance and arbitration procedure.[18] For the reasons that follow, we conclude that these restrictions on the relief avail-

and incidental or punitive damages, relief that Clayton is apparently seeking in his § 301 action. See App. 9.

[18] The parties stipulated at trial that once Local 509 withdrew its request for arbitration, that "was the end of the road so far as remedies under the contract were concerned." Tr. 109; see also *id.,* at 260, 268. That stipulation is consistent with the collective-bargaining agreement. Although Art. VIII, § 5, which establishes time limits for processing *grievances,* states that "[t]he time limits contained herein may be extended by mutual agreement in writing by the parties concerned," there is no comparable waiver provision in Art. IX, which establishes the 15-day time limit for requesting *arbitration.* See also *Tinsley* v. *United Parcel Service, Inc.,* 635 F. 2d, at 1292; *Baldini* v. *Local Union No. 1095,* 581 F. 2d, at 150; *Harrison* v. *Chrysler Corp.,* 558 F. 2d, at 1279.

Although most collective-bargaining agreements contain similarly strict time limits for seeking arbitration of grievances, there are some exceptions. The UAW informs us that "[s]ome employers and unions have, through collective bargaining, agreed to allow the reinstatement of withdrawn grievances where a union tribunal reverses the union's initial decision. This is true, for example, in the current UAW contracts with the major automobile and agricultural implement manufacturers." Brief for Respondents in No. 80–5049, p. 18, n. 40. In such cases, the relief available through the union's internal appeal procedures would presumably be adequate.

able through the internal UAW procedures render those procedures inadequate.[19]

Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum. Thus, if the employee received the full relief he requested through internal procedures, his § 301 action would become moot, and he would not be entitled to a judicial hearing. Similarly, if the employee obtained reactivation of his grievance through internal union procedures, the policies underlying *Republic Steel* would come into play,[20] and the employee would be required to submit his claim to the collectively bargained dispute-resolution procedures.[21] In either case, exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues.

---

[19] Accordingly, we need not discuss the third factor, whether exhaustion of the union's otherwise adequate internal appeals procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

[20] Allowing a defendant in a § 301 action to demand exhaustion of internal union procedures when those procedures could lead to reactivation of a stalled grievance is wholly consistent with *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650 (1965). In *Republic Steel,* we held that an employer may rely on a provision in a collective-bargaining agreement requiring its employees to submit all contractual grievances to arbitration prior to bringing suit under § 301. If a provision in the collective-bargaining agreement also permits reactivation of a grievance after an internal union appeal, an employer or union should also be able to rely on that provision and thus defend the § 301 suit on the ground that the employee failed to exhaust internal union procedures.

[21] In addition, by reactivating the grievance, the union might be able to rectify the very wrong of which the employee complains—a breach of the duty of fair representation caused by the union's refusal to seek arbitration—and the employee would then be unable to satisfy the precondition to a § 301 suit against the employer.

By contrast, where an aggrieved employee cannot obtain either the substantive relief he seeks or reactivation of his grievance, national labor policy would not be served by requiring exhaustion of internal remedies. In such cases, exhaustion would be a useless gesture: it would delay judicial consideration of the employee's § 301 action, but would not eliminate it.[22] The employee would still be required to pursue judicial means to obtain the relief he seeks under § 301. Moreover, exhaustion would not lead to significant savings in judicial resources, because regardless of the outcome of the internal appeal, the employee would be required to prove *de novo* in his § 301 suit that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement.[23] As we recently stated, one of the important federal policies underlying § 301 is the " 'relatively rapid disposition of labor disputes.' " *United Parcel Service, Inc.* v. *Mitchell, ante,* at 63, quoting *Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696, 707 (1966). This policy is undermined by an exhaustion requirement unless the internal procedures are capable of either reactivating the employee's grievance or of redressing it.[24]

---

[22] Of course exhaustion might deplete the employee's energy and resources to the point where he chooses not to pursue his § 301 claim in court, but that result is surely inconsistent with federal policy.

[23] Even if the union admitted during the internal appeals procedures that it had breached its duty of fair representation, an admission the UAW has apparently made only once in the 20 years preceding 1977, see Klein, Enforcement of the Right to Fair Representation: Alternative Forums, The Duty of Fair Representation 103 (1977), the employee would still not be saved the time and expense of proving that breach in his § 301 suit. While a union's admission that it breached its duty of fair representation is certainly evidence a court can consider, an employer defending a § 301 suit would still be entitled to prove that no such breach had occurred. See *Vaca* v. *Sipes,* 386 U. S., at 186–187.

[24] We are also not persuaded by the Court of Appeals' assumption that exhaustion would narrow and focus the issues for ultimate judicial determination. The Court of Appeals stated:

"The UAW's liability (if any) for breach of its duty of fair representation

In reliance upon the Court of Appeals' opinion in these cases, the UAW contends that even if exhaustion is not required with respect to the employer, it should be required with re-

would depend on the reasons for the union's withdrawal of the arbitration request. There is little in the record to indicate why the local official changed his mind and withdrew the arbitration request. But *the missing motive is precisely the sort of information that an appellate body within the union would have elicited, compiling a record that would greatly assist the court now."* 623 F. 2d, at 566 (emphasis added).

There are three reasons why we are not persuaded by this analysis. First, the record *does* indicate why the union withdrew its request for arbitration of Clayton's grievance. The letter from Local 509's International Representative to Clayton, informing him that the union had withdrawn its request for arbitration, listed five reasons in support of the union's decision. See n. 2, *supra.* Second, since the UAW Constitution does not on its face require any of the decisionmaking panels of the union to explain the reasons underlying their disposition of an employee's internal union appeal, there is no guarantee that exhaustion will result in a useful interpretation of union rules. Third, in many cases the union tribunal is not permitted to consider certain allegations the employee could assert under § 301. In these cases, for example, Clayton alleges that the union "acted *arbitrarily . . .* and discriminatorily" in refusing to seek arbitration of his grievance. App. 6 (emphasis added). The UAW Constitution, however, states that the Public Review Board can only consider allegations that the employee's grievance "was improperly handled [by the union] because of *fraud, discrimination, or collusion with management."* Art. 33, § 8 (b) (emphasis added). This standard offers the aggrieved employee less protection than the "arbitrary, discriminatory, or in bad faith" standard for breach of the duty of fair representation that we developed in *Vaca* v. *Sipes, supra,* at 190. As the General Counsel to the Public Review Board has stated:

"The UAW acknowledges that it has a duty of fair representation to its members. Moreover, it acknowledges that its members may assert a claim for a breach of the duty of fair representation within the system of internal remedies. It does not concede to its members, however, that arbitrary, perfunctory, or negligent conduct amounts to a breach of the duty of fair representation, nor does it permit them even to assert this type of claim before the PRB, since the standard of review is jurisdictional. That is, unless the requisite claim is made (fraud, discrimination, or collusion) the board may not entertain it." Klein, *supra,* at 99.

See also *Johnson* v. *General Motors,* 641 F. 2d, at 1081. Of course,

spect to the union, because the relief Clayton seeks *against the union* in his § 301 suit is available through internal union procedures. But cf. n. 17, *supra*. We disagree. While this argument might have force where the employee has chosen to bring his § 301 suit only against the union, the defense should not be available where, as here, the employee has filed suit against both the union and the employer. A trial court requiring exhaustion with respect to the suit against the union, but not with respect to the suit against the employer, would be faced with two undesirable alternatives. If it stayed the action against the employer pending resolution of the internal appeals procedures, it would effectively be requiring exhaustion with respect to the suit against the employer, a result we have held would violate national labor policy. Yet if it permitted the action against the employer to proceed, and tolled the running of the statute of limitation in the suit against the union until the internal procedures had been exhausted, it could very well find itself with two separate § 301 suits, based on the same facts, proceeding at different paces in its courtroom. As we suggested in *Vaca* v. *Sipes,* 386 U. S., at 197, this is a result that should be avoided if possible. The preferable approach is for the court to permit the employee's § 301 action to proceed against both defendants, despite the employee's failure to exhaust, unless the internal union procedures can reactivate the grievance or grant the relief that would be available in the employee's § 301 suit against both defendants.

## III

In contrast to contractual grievance and arbitration procedures, which are negotiated by the parties to a collective-bargaining agreement and are generally designed to provide

---

if an allegation cannot be considered by the Public Review Board, no record helpful to a court will be made with respect to that issue. In sum, we conclude that the prospect that exhaustion would create a record helpful to a court in a subsequent § 301 action is too speculative to be given much weight.

an exclusive method for resolving disputes arising under that agreement, internal union appeals procedures are created by the union constitution and are designed to settle disputes between an employee and his union that arise under that constitution. Because of this distinction, the policies underlying *Republic Steel,* encouraging private resolution of grievances arising out of the collective-bargaining process, are not directly applicable to the issue whether to require exhaustion of internal union procedures.

We conclude that the policies underlying *Republic Steel* are furthered by an exhaustion requirement only where the internal union appeals procedures can either grant the aggrieved employee full relief or reactivate his grievance. For only in those circumstances is there a reasonable possibility that the employee's claim will be privately resolved. If the internal procedures are not adequate to effect that relief, the employee should not be required to expend time and resources seeking a necessarily incomplete resolution of his claim prior to pursuing judicial relief. If the internal procedures are inadequate, the employee's failure to exhaust should be excused, and he should be permitted to pursue his claim for breach of the duty of fair representation and breach of the collective-bargaining agreement in court under § 301.

In this case, the internal union appeals panels cannot reactivate Clayton's grievance and cannot grant Clayton the reinstatement relief he seeks under § 301. We therefore hold that Clayton should not have been required to exhaust internal union appeals procedures prior to bringing suit against his union and employer under § 301.

*Affirmed in part, reversed in part, and remanded.*

JUSTICE POWELL, with whom THE CHIEF JUSTICE joins, dissenting.

I join JUSTICE REHNQUIST's dissent, and write briefly to

emphasize a rationale—suggested by an *amicus curiae**—that is consistent both with national labor policy and the relevant precedents.

In briefest summary, I would hold that in the circumstances of this case no issue concerning the breach of the union's statutory duty of fair representation properly can be said to arise *at all*. The union has not made a final determination whether to pursue arbitration on Clayton's behalf. Clayton should not be able to claim a breach of duty by the union until the union has had a full opportunity to make this determination. No such opportunity exists until Clayton exhausts the procedures available for resolving that question. Thus, as Clayton cannot claim a breach of duty by the union, he cannot bring a breach of contract suit under § 301 against his employer.

In my view, the asserted distinction in a tripartite case such as this one between contractual and internal union remedies, *ante,* at 687, is immaterial. The situation presented in this case is well within the doctrine underlying *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650 (1965), that employees must pursue all procedures established for determining whether a union will go forward with a grievance. Employees must pursue available procedures even if the collective-bargaining agreement contains time limits that appear on their face to bar revival of the grievance. As the Court noted in *John Wiley & Sons* v. *Livingston,* 376 U. S. 543, 556–557 (1964), "[q]uestions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it." Therefore, "it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the

---

*Brief for the American Federation of Labor and Congress of Industrial Organizations as *Amicus Curiae* 3–4, 5–14.

dispute which called the grievance procedures into play." *Id.*, at 559. Thus, the question whether such time limits should be waived in a particular case is itself an arbitrable matter.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE, JUSTICE STEWART, and JUSTICE POWELL join, dissenting.

The Court of Appeals for the Ninth Circuit held that the defense of exhaustion of internal union remedies was available to the union defendant in this § 301 action but not to the employer defendant. The result of this ruling was to put the employer in the unenviable position of having to defend the manner in which the union represented one of its employees (Clayton) during a grievance procedure. The Court's opinion today rights what I view as the principal error in the decision below by requiring the actions against the employer and union to proceed simultaneously. *Ante,* at 695. The Court reaches this conclusion by holding that in this particular case the exhaustion defense should not be available to either the union or employer. I, however, view differently than does the Court the benefits to be obtained from requiring exhaustion in these cases, and would require Clayton to exhaust his intraunion remedies before proceeding against either his union or employer.

The Court does not require exhaustion of internal union remedies in this case because it finds the remedies cannot provide Clayton with all the substantive relief he seeks (*i. e.,* money damages *and* reinstatement) or with reactivation of his grievance. *Ante,* at 693. The Court, however, concedes that where the internal remedies can provide such relief, the exhaustion defense should be available to the employer and union alike. *Ante,* at 692, and n. 20. Presumably, this would require exhaustion in a § 301 case where the only relief sought was money damages and money damages were obtainable through the internal union procedures. In such a case, the employee would be able to obtain all "the substantive relief he seeks." *Ante,* at 693.

The Court creates a three-prong test for determining when a district court should exercise its discretion and require exhaustion of intraunion remedies. *Ante,* at 689. Admittedly, a district court when exercising this discretion should carefully consider the first criterion referred to by the Court— whether union officials are so hostile to the employee that he could not obtain a fair hearing on his claim. *Ibid.* However, there is no question that this criterion does not come into play in this case. *Ibid.*

The second prong of the Court's test is "whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301 . . . ." *Ibid.* Exhaustion is not required in this case, the Court says, because the UAW's internal union appeals procedures cannot provide Clayton with reinstatement or reactivation of his grievance.

However, no prior case of this Court has held that exhaustion should not be required unless the internal union remedies can provide all the substantive relief requested or reactivation of the grievance. The principal difficulty with the Court's opinion lies in its framing of this second criterion which reflects much too narrow a view of the purposes of the exhaustion defense and the benefits which will likely result from requiring exhaustion in a case where a union has established a means for reviewing the manner in which it has represented an employee during a grievance. It is worth noting that neither *NLRB* v. *Marine Workers,* 391 U. S. 418 (1968), on which the Court so heavily relies, nor any other case of this Court, supports the language used by the Court in the second prong of its test. In fact, *Marine Workers* simply states exhaustion should not be required "when the administrative remedies are inadequate." *Id.,* at 426, n. 8. Our focus therefore should be on the adequacies of the union remedies when viewed in the context of the underlying purpose of the exhaustion defense—which is to encourage private rather than judicial resolution of disputes.

The exhaustion of intraunion remedies, even where those remedies cannot provide reinstatement or reactivation of a grievance, does promote private resolution of labor disputes. Resort to the intraunion appeals procedures provides the union with its first opportunity to focus on the issue of fair representation—as opposed to the alleged breach of the collective-bargaining agreement. Resort to the union appeals procedures gives the union an opportunity to satisfy the employee that its decision not to pursue a grievance was correct. If successful on this score, litigation is averted. Where a union determines through its appeals procedures that it mishandled an employee's grievance, litigation may also be averted because at that point both the union and the employer have a strong incentive to pursue private resolution of the grievance. Even where a collective-bargaining agreement does not provide for reactivation of a grievance, it is reasonable to assume that many employers, when confronted with both a determination by a union that it had breached its duty of fair representation and the immediate prospect of an employee commencing litigation, would seriously consider voluntarily reactivating the grievance procedure to avoid the additional burden and costs of litigation. Should litigation nonetheless occur, exhaustion may well have narrowed the factual and legal issues to be decided and thus result in a savings of judicial resources. A fact that should also not be discounted is that the conscientious handling by a union of an employee's intraunion appeal cannot help but enhance the union's prestige with its members. Cf. *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650, 653 (1965). Exhaustion promotes union democracy and self-government as well as the broader policy of noninterference with internal union affairs. A union's incentive to maintain internal procedures which provide substantial procedural protection and which can afford significant substantive relief will be greatly undermined if an employee can simply bypass the procedures at will.

The error in the Court's analysis results in part from its

apparent belief that intraunion remedies must provide a complete substitute for either the courts or the contract grievance procedure in order to be deemed "adequate." The purpose of intraunion remedies, however, is quite different. These remedies are provided to facilitate or encourage the private resolution of disputes, not to be a complete substitute for the courts. Intraunion remedies can serve this purpose so long as they have the capacity to address whether the union wrongfully handled the grievance. Obviously, if a union appeals procedure cannot address this question, exhaustion should not be required.

An additional question which is also of great importance is whether a union should ever be found to have breached its duty of fair representation when a union member shuns an appeals procedure which is both mandated by the union consitution and established for the purpose of allowing the union to satisfy its duty of fair representation. It seems to me not at all unreasonable to say that a union should have the right to require its members to give it the first opportunity to correct its own mistakes. Responsible union self-government demands a fair opportunity to function. This is especially true in a situation such as here where exhaustion of the union remedies could eliminate the need to litigate altogether. Congress has recognized the importance of these values in § 101 (a) (4) of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U. S. C. § 411 (a) (4). This section provides in part:

> "No labor organization shall limit the right of any member thereof to institute an action in any court, or any proceeding before any administrative agency . . . . *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . . ."

In § 101 (a)(4), Congress has restricted the power of unions to limit the rights of their members to resort to the courts. At the same time, however, Congress gave the judiciary the discretion to require union members to exhaust hearing procedures. As this Court explained in *Marine Workers*, the language in § 101 (a)(4) is

> "a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union. We read it, in other words, as installing in this labor field a regime comparable to that which prevails in other areas of law before the federal courts, which often stay their hands while a litigant seeks administrative relief before the appropriate agency." 391 U. S., at 426.

Section 101 (a)(4) reflects what I believe to be the reasonable compromise Congress reached when trying to balance two somewhat competing interests—furtherance of the national labor policy in favor of private resolution of disputes on the one hand and the desire not to unduly burden or "exhaust" an individual employee with time-consuming procedures on the other. It is fair to say that § 101 (a)(4) represents Congress' judgment that limiting access to the courts for at least four months is not an unreasonable price to pay in exchange for the previously mentioned benefits exhaustion may provide.

The language of § 101 (a)(4) also goes a long way to satisfy the third prong of the test set forth by the Court today. Exhaustion of internal union procedures should not be required where such would unreasonably delay an employee's opportunity to obtain a judicial hearing on the merits of his claim. *Ante,* at 689. Intraunion procedures which take years to complete serve no worthwhile purpose in the overall scheme of promoting the prompt and private resolution of claims. But a requirement that an employee not be per-

mitted to go to court without first having pursued an intra-union appeal for at least four months does substantially further this national labor policy without placing any unfair burden on an employee. As such, I think all interested parties would be well served by a requirement that employees exhaust their intraunion procedures for this limited period of time prescribed by Congress.