850 F.2d 689
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Joan S. OLIVER, Plaintiff-Appellant,
v.
CHESAPEAKE & POTOMAC TELEPHONE COMPANY, OF VIRGINIA;
Communications Workers of America, Local 2205;
Communications Workers of America,
AFL-CIO, Defendants-Appellees,
and
Sickness and Accident Disability Benefits Plan and Long Term
Benefit Plan of the Bell Atlantic; Sickness and Accident
Disability Benefits Plan of the Chesapeake and Potomac
Telephone Company of Virginia, Defendants.
 
 No. 87-1735.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 2, 1988.
Decided: June 30, 1988.
 Oldric J. LaBell, Jr., for appellant.
 R. Michael Smith (Frank, Bernstein, Conway & Goldman, on brief), Norman M. Gleichman, for appellees.
 Before CHAPMAN and WILKINS, Circuit Judges, and EUGENE A. GORDON, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Joan Oliver appeals the dismissal of her hybrid action alleging breach of a collective-bargaining agreement by her employer and breach of her union's duty of fair representation. We affirm.
 
 I.
 
 2
 Oliver was employed by Chesapeake & Potomac Telephone Company of Virginia (C & P). In 1982, after a personnel reorganization, C & P notified Oliver that she would be transferred from Newport News to Virginia Beach. Because of Oliver's objection and her claim that this transfer would present problems with her son's special education classes, C & P attempted to find a job for her nearer her child's school. These efforts were unsuccessful and in March Oliver was told again that she would be transferred to Norfolk.
 
 
 3
 Following this notification, Oliver began an extended period of sick leave due to an alleged psychological disability. Meanwhile, C & P continued its efforts to address Oliver's needs. It allowed her to test for another position closer to Newport News but, unfortunately, she failed the examination. During the testing period, Oliver was released from her doctor's care and returned to work. However, she resumed sick leave immediately after learning that she had failed the test and would be required to report to Norfolk.
 
 
 4
 A follow-up examination by a C & P physician concluded that, rather than being psychologically disabled as her doctor indicated, Oliver was simply angry over her transfer. After the C & P physician indicated that Oliver could return to work, C & P instructed her to report to Norfolk on June 9 with the understanding that she would be allowed leave when her son's needs required it. She failed to report as instructed, and on June 24 received a final warning that she would be terminated if she did not report by July 1. She was discharged on July 3 when she failed to report to Norfolk.
 
 
 5
 Oliver then filed a grievance challenging her transfer and termination, her failure to receive a termination allowance, and termination of sick leave benefits. She was represented by Local 2205 (Local 2205) of the Communication Workers of America (CWA) in the grievance proceeding. C & P denied the grievance, but again offered her the job assignment in Norfolk. Oliver rejected the offer and the union representative timely appealed under the grievance procedure. Again, the offer of a position in Norfolk was made and rejected, and the grievance was denied. The union representative then notified C & P of the union's demand for arbitration of Oliver's grievance. Although C & P asserted initial questions as to the timeliness of the demand and the arbitrability of the claim, the record establishes that such objections previously had not barred arbitration with the company.
 
 
 6
 After the union representative further reviewed the entire file, he concluded that Oliver would not prevail on her grievance at arbitration and so informed Local 2205. However, C & P was not informed of the representative's opinion and the request to arbitrate the grievance was not withdrawn. Local 2205's request to the national union vice president for reconsideration of the union representative's recommendation was denied.
 
 
 7
 Two months after denial of reconsideration, Oliver appealed under the union procedures to the president of the national union. Within 30 days the president affirmed the decision not to arbitrate. After the president's decision was rendered, the next step in the process would have been an appeal to the union executive committee. If unsuccessful before that committee, the union member may then appeal to the executive board. Finally, a member may appeal to the annual CWA national convention. It is undisputed that Oliver did not pursue her appeal beyond the president's decision and thus did not exhaust the internal appeals process of her union.
 
 
 8
 Oliver brought suit in district court against C & P, Local 2205, and CWA alleging: (1) wrongful termination under a collective-bargaining agreement, and breach of the union's duty of fair representation, (2) wrongful denial of a termination allowance, seniority, and procedural rights applicable to reductions in force and transfer, and (3) wrongful denial of benefits under an employee benefit and pension plan. The district court granted summary judgment for defendants on the first two claims because Oliver "failed to exhaust her internal union remedies set forth in the CWA Constitution." The first two claims were accordingly dismissed, and the parties later dismissed the third claim by stipulation.
 
 II.
 
 9
 Generally, an employee must exhaust any grievance or arbitration remedies provided in a collective-bargaining agreement before bringing suit against the employer or the union. Clayton v. United Auto. Workers, 451 U.S. 679 (1981). However, it is discretionary with the court whether to require exhaustion. Id. In Clayton, the Supreme Court identified three factors relevant to the exercise of this discretion, any one of which will justify excusing the exhaustion requirement:
 
 
 10
 whether union officials are so hostile to the employee that [she] could not hope to obtain a fair hearing on [the] claim;
 
 
 11
 whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award [her] the full relief [she] seeks under Sec. 301; and
 
 
 12
 whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of [the] claim.
 
 
 13
 Id. at 689.
 
 
 14
 The district court considered the exhaustion issue on a motion for summary judgment, concluding that there was "no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), and that "none of the factors enunciated in Clayton [exist] that would permit this court to excuse the plaintiff from exhausting her internal union appeals." After a full review of the record we hold that the district court did not abuse its discretion in dismissing Oliver's claim for failure to exhaust grievance procedures.
 
 
 15
 AFFIRMED.