John WINSTON, et al., Plaintiffs–
Appellants,

v.

GENERAL DRIVERS, WAREHOUSE-
MEN & HELPERS, LOCAL UNION
NO. 89; Dallas & Mavis Forwarding
Company, Inc.; Provincial American
Truck Transporters, Inc., Defendants–
Appellees.

No. 95–5486.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1996.

Decided Aug. 22, 1996.

Marvin L. Coan (argued and briefed), Hummel & Coan, Louisville, KY, for Plaintiffs–Appellants.

Alton D. Priddy (argued and briefed), Hardy, Logan, Priddy & Cotton, Louisville, KY, for General Drivers, Warehousemen & Helpers, Local Union No. 89.

F. Larkin Fore, Mulloy, Walz, Wetterer, Fore & Schwartz, Louisville, KY, John Holmquist (argued and briefed), Charfoos, Reiter, Peterson & Holmquist, Farmington Hills, MI, for Dallas & Mavis Forwarding Co., Inc. and Provincial American Truck Transporters, Inc.

Before: MERRITT, Chief Judge; MILBURN, Circuit Judge; ZATKOFF, District Judge.*

MERRITT, Chief Judge.

This action is a labor dispute arising under Section 301 of the Labor Management Relations Act. Plaintiffs, who lost their jobs when their employer failed in its attempt to rebid the contract under which plaintiffs were working, have sued their union for breach of its duty of fair representation and their former employer for breach of the applicable collective bargaining agreement. The court below granted summary judgment in favor of the defendants. We affirm because plaintiffs have failed to exhaust the grievance procedures mandated by their collective bargaining agreement.

The parties to this action have an extremely convoluted history of dealings with each other, but the facts can be somewhat simplified for the purposes of this appeal. Plaintiffs are former employees of Dallas & Mavis Forwarding Company who worked at Ford Motor Company's Kentucky Truck Plant. While employed at Dallas & Mavis, plaintiffs were members of General Drivers, Ware-

---

* The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

housemen & Helpers, Local Union No. 89. Prior to 1990, Dallas & Mavis handled delivery of new trucks from the Kentucky Truck Plant to destinations in the western United States, western Canada, and the upper midwestern United States. Dallas & Mavis handled delivery by "driveaway," a method of transport in which the front of a truck is mounted on the rear of another vehicle, which is then driven. Another company, Allied Systems (who was succeeded in interest by Provincial American Truck Transporters, a defendant in this case) performed no driveaway operations at the Kentucky Truck Plant, but instead handled "yard and mounting" operations, work consisting of taking finished trucks from the end of the production line, storing the units for a time before mounting, and then raising them by overhead cranes onto saddle mounts for shipping. In February 1990 Ford rebid operations at the truck plant. As a result, Allied was given a contract for delivery (by driveaway) to the upper midwest, while Dallas & Mavis was given the yard and mounting operations. Dallas & Mavis retained its driveaway operations to the western U.S. and Canada.

Based on past union/employer resolutions of staffing and seniority issues, Dallas & Mavis believed that its drivers who were displaced from the upper midwest driveaway operation would be given seniority in staffing the new yard and mounting jobs, and that, accordingly, the Allied workers who had done yard and mounting work would not be allowed to follow their work by "dovetailing" into the Dallas & Mavis seniority list. Dallas & Mavis believed that the Allied workers would take over the new driveaway jobs for which Allied had won the contract. Accordingly, Dallas & Mavis hired its 35 displaced driveaway employees to fill 35 vacancies in its new yard and mounting operation. Allied, however, laid off its yard workers rather than hiring them for the new driveaway positions.

A special meeting of the National Automobile Transporters Joint Arbitration Committee was held on March 7–8, 1990, to consider seniority issues in the staffing of the Kentucky Truck Plant and other Ford facilities following the February rebid. The National Committee considered the seniority provisions of the National Master Automobile Transporters Agreement, the collective-bargaining agreement applicable to the dispute, but could not reach a conclusion as to who should staff the driveaway and yard jobs that had "swapped" between Dallas & Mavis and Allied. Another special meeting to resolve this issue was held on March 22–23, 1990, but the National Committee "deadlocked" again, specifically over the issue of who was to staff the yard and mounting jobs that were in dispute. To resolve the issue, the Committee submitted the issue to a Board of Arbitration, as provided for in the collective-bargaining agreement.

The Board of Arbitration hearing was held September 24, 1990, in Louisville, home of the Kentucky Truck Plant. Local 89 presented evidence to the Board which focused on the jobs lost by the Allied workers in the yard operation, rather than on all of the seniority issues raised by the 1990 rebidding, even though reinstatement of Allied workers in the yard operation would necessarily displace the Dallas & Mavis driveaway workers who had been reassigned to the yard. Dallas & Mavis believed that the upper midwest driveaway operation jobs would also be considered, but they were not.

The Board decided, in an opinion issued December 14, 1990, that the displaced Allied yard workers should be dovetailed into Dallas & Mavis's seniority list. Because the Allied employees had been working in Louisville longer than the Dallas & Mavis employees, they moved to the top of the list. Seventy-six of the Allied workers were more senior than the most senior employee of Dallas & Mavis. Dallas & Mavis then laid off their yard workers (former driveaway workers) and hired the displaced Allied workers, paying over $2 million in backpay. The newly displaced Dallas & Mavis workers (the present plaintiffs) asked the union in February 1991 to reopen the arbitration opinion and award to address their recent job displacement. The union took the position that the complaint was beyond the scope of the arbitration award, which only addressed the yard operation. The Board of Arbitration agreed,

and issued a Supplemental Award on June 28, 1991, to this effect.

In a separate action, Dallas & Mavis challenged the first Board of Arbitration decision as an incorrect interpretation of the collective-bargaining agreement. The district court granted summary judgment to the union, and this Court affirmed, holding that the arbitrators' decision was rationally drawn from the essence of the collective-bargaining agreement. *See Dallas & Mavis Forwarding Co. v. General Drivers, Local Union No. 89*, 972 F.2d 129 (1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 973, 122 L.Ed.2d 128 (1993). In March 1991, plaintiffs brought this action under § 301 of the LMRA. The District Court granted summary judgment to the defendants, and plaintiffs filed this appeal.

Plaintiffs' complaint, in its essence, is that Local 89 breached its duty of fair representation by favoring Allied workers at the expense of Dallas & Mavis workers in all stages of the proceedings which led to the Board of Arbitration decision. As a result of the union's favoritism, plaintiffs allege, the Board only considered the issue of the displaced Allied yard workers, thus leaving the issue of the upper midwest driveaway jobs unresolved, to the Dallas & Mavis employees' detriment.

Plaintiffs pursue their action under Section 301 of the Labor Management Relations Act of 1947. The relevant provision states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1994). In the most basic § 301 action, a union sues an employer for a breach of the collective bargaining agreement entered into by the parties.

Courts have also recognized a "hybrid" § 301 action, where an employee sues both her union and her employer. *See, e.g., Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) ("Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge."). The present case presents a classic hybrid § 301 action: the former Dallas & Mavis employees have sued their union for breach of its duty of fair representation and their employer for breach of the collective bargaining agreement. In order to prevail, plaintiffs must prove both breaches. *Hines*, 424 U.S. at 570–71, 96 S.Ct. at 1059–60.

The court below granted summary judgment to defendants because plaintiffs only alleged a *prospective* breach of the collective bargaining agreement by Dallas & Mavis. At the time plaintiff's complaint was filed, Dallas & Mavis had not yet implemented the decision of the Board of Arbitration, as it was fighting the decision in court.[1] The District Court found that a prospective breach of the collective bargaining agreement by an employer will not support a § 301 claim. *See* J.A. at 871 (Memorandum and Order) ("This Court is not persuaded that a prospective breach satisfies the first requirement for an unfair representation claim; i.e. breach by the employer.")

The District Court is not correct in this conclusion. Plaintiffs' theory is not novel. They allege: the union breached its duty of fair representation in pursuing arbitration; this breach tainted the entire arbitration process and rendered the award invalid; any implementation of the award by Dallas & Mavis would be a breach of the collective bargaining agreement. This kind of prospective claim was recognized as a valid § 301 claim in *Humphrey v. Moore*, 375 U.S. 335,

---

1. The arbitration award, upheld by this Court in 1992, has since been implemented by Dallas & Mavis.

84 S.Ct. 363, 11 L.Ed.2d 370 (1964), a case which arose out of this same kind of seniority dispute at this same Ford truck plant. The Court observed:

> No fraud is charged against the employer; but except for the improper action of the union, which is said to have dominated and brought about the decision, it is alleged that [the employer] would have agreed to retainits own employees. The fair inference from the complaint is that the employer considered the dispute a matter for the union to decide. Moreover, *the award had not been implemented at the time of the filing of the complaint.* . . .

*Id.* at 343, 84 S.Ct. at 368 (emphasis added).

While it is true that most disputes which give rise to a § 301 claim will be precipitated by an employer's breach of contract—e.g. firing an employee without just cause—and that the union's breach of duty will come later, in not properly representing the employee in the grievance process, there is no reason why the employer's action has to come first.

■ But, even though plaintiffs can state a valid § 301 claim, judgment against them is appropriate, as they have failed to exhaust the grievance procedures required by their collective bargaining agreement. Plaintiffs never attempted to file a grievance with their company or union, even though the union advised them to shortly after they filed their lawsuit. *See* J.A. at 641 (Affidavit of union representative Charles Spond); J.A. at 904 (statement of plaintiff's counsel during court hearing).

■ Plaintiffs make two arguments that they should not be required to exhaust grievance procedures.[2] The first, accepted by the Magistrate below and adopted without comment by the District Court, is that, in the court's discretion, employees are not required to exhaust internal union remedies before filing a lawsuit, if the internal remedies would be futile. *See Clayton v. United Automobile, Aerospace, and Agricultural*

*Implement Workers,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981); *Wagner v. General Dynamics,* 905 F.2d 126, 128 (6th Cir.1990). While *Clayton* and *Wagner* correctly state the law, they are completely inapplicable to this case. Both cases concern a failure to exhaust *internal* union appeals procedures. In the present case, however, plaintiffs have failed to commence the 4–step grievance procedure mandated by the parties' collective bargaining agreement. *See* National Master Automobile Transporters Agreement, Art. 7, § 4, Steps 1–4. Exhaustion of contractual grievance procedures is always required. *See Clayton,* 451 U.S. at 686, 689, 101 S.Ct. at 2093–94, 2095 (1981). Such a holding is consistent with congressional policy that the court system is a place of last resort for employee grievances. As the Supreme Court noted in *Hines:*

> Collective-bargaining contracts, however, generally contain procedures for the settlement of disputes through mutual discussion and arbitration. These provisions are among those which are to be enforced under § 301. Furthermore, Congress has specified in § 203(d), 61 Stat. 154, 29 U.S.C. § 173(d), that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes...." This congressional policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960).

424 U.S. at 562, 96 S.Ct. at 1055.

Plaintiffs' second argument against exhaustion is more compelling but also ultimately unpersuasive. They argue that a new grievance was unnecessary, as it would have been totally duplicative of case 3–90–237, which dealt with seniority issues at the Kentucky Truck Plant and which had already been presented to the National Automobile

---

**2.** On appeal, plaintiffs do not address defendant Union's exhaustion argument, relying on the fact that the Magistrate ruled in the plaintiffs' favor on that issue and the District Court judge did not specifically address the issue in its ruling. *See*

Plaintiff's Reply Brief at 5. As requested, this Court will consider plaintiffs' arguments as set forth in their Memorandum in Opposition to Motion for Summary Judgment.

Transporters Joint Arbitration Committee at its special meeting in March 1990. While it is true that the union's alleged failure to fairly represent the plaintiffs' interests at the National Committee meeting is the heart of the present conflict, case 3–90–237 was brought by Dallas & Mavis and Allied on their own accord, not as a result of a grievance by any of the plaintiffs in this action. The case is summarized on the docket of the National Committee meeting as "Request of Companies to establish seniority rights under Article 5 of the National Agreement or other National or Supplemental Agreement provisions relating to transfer of business at the Kentucky Truck Plant facility." While resolution of this case might well have solved the issue of seniority rights in the upper midwest driveaway work, for whatever reason the National Committee chose not to focus on that issue, and instead looked at seniority in the yard and mounting work.[3] At any rate, a complaint by the two employers to the National Committee does not begin to satisfy the very specific grievance procedures that plaintiff is required to follow under the collective bargaining agreement.

Plaintiffs had no reason to file a grievance until they lost their yard work. Instead of filing a grievance, though, they filed this lawsuit, even though the union encouraged them to file a grievance. As the union points out, the Board of Arbitration decision would have been strong precedent in favor of the Dallas & Mavis workers had they filed a grievance because once the seniority lists for yard operations were "dovetailed" it would have also made sense to dovetail the lists for the upper Midwest driveaway jobs. But no grievance was filed, and plaintiffs do not give a good reason for not grieving. Cases which do not require exhaustion of *internal* union appeals procedures are not relevant, for plaintiffs have failed to follow the contractual grievance procedures found in the collective-bargaining agreement.

3.  The issue before the National Committee and the Board of Arbitration was probably narrowed more due to the actions of Dallas & Mavis and Allied than those of the union. Allied laid off its yard workers after the 1990 rebid. Dallas & Mavis did not lay off its driveaway workers, choosing instead to reassign them to its new yard and mounting jobs. Thus, at the time of the

The District Court order granting summary judgment to defendants is thus affirmed on the ground that plaintiffs failed to exhaust the grievance procedures mandated by their collective bargaining agreement. If the plaintiffs in this action still seek redress, they should file a grievance with their union as required by the collective bargaining agreement. If Local 89 refuses to process the grievance, due to the lapse of time since the alleged injury or for any other reason, the next step will be contractually mandated arbitration. *See* Master Agreement, Art. 7, § 4, Step 4 ("If the grievance is not resolved at the local-level hearing, either party has the right to file the grievance with the appropriate Joint Arbitration Committee …"). Whether plaintiffs have forfeited their opportunity for relief by failure to comply with the provisions of the collective bargaining agreement is itself a question for arbitration.

The order of the District Court is AFFIRMED.

National Committee meetings and the Board of Arbitration hearing, only the Allied workers had been displaced. Resolution of the dispute in favor of the Allied workers would necessarily impact Dallas & Mavis's upper Midwest drivers, who were now working in the yard, but the focus was on the employees who were currently out of work.