563 F.Supp. 1334 (1983)
LOCAL 644 INTERNATIONAL PHOTOGRAPHERS OF The MOTION PICTURE INDUSTRY OF THE INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES AND MOVING PICTURE MACHINE OPERATORS OF The UNITED STATES AND CANADA, AFL-CIO, et al., Plaintiffs,
v.
INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES AND MOVING PICTURE MACHINE OPERATORS OF The UNITED STATES AND CANADA, AFL-CIO, et al., Defendants.
No. 82 Civ. 2873(ADS).
United States District Court, S.D. New York.
May 26, 1983.
As Amended May 26, 1983.
*1335 *1336 Richard M. Greenspan, New York City, for plaintiffs.
Delson & Gordon, New York City (Ralph P. Katz, New York City, of counsel), for defendants.

MEMORANDUM OPINION AND ORDER
SOFAER, District Judge:
Plaintiffs, Local 644 and various of its officers and representatives, bring this action against their parent union, the International Alliance of Theatrical Stage Employes and Moving Picture Machine Operators of the United States and Canada, AFL-CIO ("IATSE" or "International") and against several IATSE officers, claiming that IATSE, bargaining on behalf of another IATSE local, Local 659, in collective bargaining, violated the jurisdictional terms of its constitution. Locals 644 and 659 are two of three local unions representing camera operators and photographers of the International. The IATSE constitution provides these locals with geographical jurisdiction over "the territory extending in any direction halfway to the next affiliated local union of the Alliance." IATSE Const. art. XVIII, § 9(b). Within their respective jurisdictions they have exclusive control over the hiring of camera crews and the terms of employment  Local 644, with headquarters in New York, over the eastern third of the country, Local 666 headquartered in Chicago, over the central states, and Local 659, headquartered in Hollywood, over the western third of the country. Id. art. XIX, § 15.
Local 644 claims that IATSE, acting as the exclusive bargaining agent for Local 659 and other West Coast locals, struck a bargain with the Hollywood producers, the employer bargaining unit, that expanded Local 659's jurisdiction beyond the boundaries set in the IATSE constitution, thereby encroaching on employment opportunities of Local 644 members. Plaintiffs claim that IATSE's actions were a breach of contract under the National Labor Relations Act § 301(a), 29 U.S.C.A. § 185(a) (1976) (the "Act"), and a breach of its duty of fair representation imposed generally under provisions of the Act. Plaintiffs seek monetary, injunctive, and declaratory relief. Defendants have moved for summary judgment, arguing that IATSE acted well within its constitutional powers in negotiating the terms of the Hollywood Basic Agreement ("Basic Agreement"), and that the dispute is purely internal, and properly resolved by internal procedures.

I. Jurisdiction.

Defendants suggest that this dispute over whether the IATSE constitution empowered its president to agree to the terms of the Basic Agreement is purely internal and should be resolved by internal means. The Supreme Court, in United Association of Journeymen v. Local 334, United Association of Journeymen, 452 U.S. 615, 624, 101 S.Ct. 2546, 2551, 69 L.Ed.2d 280 (1981), recently ruled, however, that the term contract, as used in § 301(a) of the Act, 29 U.S.C. § 185(a) (1976), which grants district courts jurisdiction to decide "suits for violation of contracts ... between any ... labor organizations," encompasses a union constitution. The plaintiff local there claimed that the international had exceeded its constitutional power in ordering the consolidation of two local unions. The Court reasoned that constitutions are contracts within the plain meaning of the statute, id. at 622, 101 S.Ct. at 2550, and that congressional policy supported this construction since "the enforcement of the terms of the union constitutions  documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals  would contribute to the achievement of labor stability," id. at 624, 101 S.Ct. at 2551. See also Local 657, United Brotherhood of Carpenters v. Sidell, 552 F.2d 1250, 1256-57 (7th Cir.1977) (en banc); Local 1219, United Brotherhood of Carpenters v. United Brotherhood of Carpenters, *1337 493 F.2d 93 (1st Cir.1974). Thus, the issue whether the IATSE president exceeded the authority granted him by the IATSE constitution in arriving at the Basic Agreement is properly before this Court. If he in fact exceeded that power, judicial intervention is appropriate.
Defendants' argument that plaintiff must exhaust internal remedies is equally unavailing. In Clayton v. UAW, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Court acknowledged the federal policy supporting a requirement that a union member first exhaust remedies provided in the union's constitution before seeking a judicial remedy. This promotes private resolution of internal disputes by self governing unions without undue judicial interference. Id. at 688, 101 S.Ct. at 2095. The Court held, however, that when the controversy calls into question the union's duty of fair representation and thus invokes statutory policies, the dispute can no longer be considered purely internal. Under these circumstances the district court has discretion to waive the exhaustion requirement. Such a waiver is particularly appropriate where plaintiffs demonstrate the futility of pursuing internal remedies. Id. at 689, 101 S.Ct. at 689; see also Doby v. Safeway Stores, Inc., 523 F.Supp. 1162, 1167 (E.D.Va. 1981). Plaintiffs have sufficiently established IATSE's unwillingness to grant the relief sought to warrant waiver of exhaustion. See Deen Affidavit ¶¶ 14-19 (Mar. 8, 1983).

II. Affirmative Relief.

Plaintiff Local 644 seeks damages to compensate its members for the employment losses they suffered as a result of the jurisdictional encroachments of Local 659, and an injunction voiding the terms of the Basic Agreement that conflict with the jurisdictional provisions of the IATSE constitution. Plaintiffs state separately claims for breach of contract and breach of the duty of fair representation, but these may be consolidated into an analysis of the alleged contract breach.
The duty of fair representation is a corollary to the collective bargaining process; it restrains a union, which, as an exclusive bargaining agent, is authorized to subordinate the individual interests of its members to the perceived interest of the bargaining unit, from bargaining in an arbitrary or discriminatory manner. Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); Smith v. Hussmann Refrigerator Co., 619 F.2d 1229, 1235-37 (8th Cir.1980) (en banc). Within these bounds, which require complete good faith and honesty of purpose in representing fairly all employees in the bargaining unit, the union is accorded broad discretion and a wide range of choice in negotiating the terms of bargains with the employer bargaining unit. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563-64, 96 S.Ct. 1048, 1055-56, 47 L.Ed.2d 231 (1976); Jensen v. Farrell Lines, Inc., 477 F.Supp. 335, 349 (S.D.N.Y.1979). Accordingly, a party claiming a breach of this duty has the burden of demonstrating by substantial evidence that the union bargained in bad faith or in an arbitrary or discriminatory manner. See Jones v. Trans World Airlines, Inc., 495 F.2d 790, 798 (2d Cir.1974); Jensen, 477 F.Supp. at 349.
Walter F. Diehl, President of IATSE, negates in his affidavit any possible inference that bad faith, discriminatory purpose, or arbitrariness motivated IATSE in 1949 when it originally agreed to the terms of the Basic Agreement challenged in this suit. According to the affidavits and exhibits in support, the Basic Agreement, which directs the hiring of camera crews by West Coast producers and grants them the right to travel with crews hired on the West Coast, struck an accommodation of several competing forces. The producers were not bound to and were not willing to abide by the IATSE constitution's jurisdictional provisions, which require members of one local to gain the permission of another local before entering its jurisdiction to work on a film crew. IATSE Const. art. XXI, §§ 7, 9. Instead, the producers pressed for artistic freedom in selecting their camera crews and the right to have their crews travel *1338 with them on location. Diehl Affidavit ¶ 24 (Feb. 28, 1983). In addition, the closed shop prohibition of the Taft-Hartley Act made unlawful the then existing terms of the Basic Agreement which required membership in IATSE as a prerequisite to employment. See id. ¶ 19. Finally, the IATSE constitution and the chronic friction among the locals required that some effort be made to protect the locals' constitutional jurisdiction within the bounds of the law. Given these constraints the IATSE president gained a compromise from the employers whereby they would be granted the right to take their crews on location in exchange for hiring camera crews exclusively from a seniority roster maintained by Local 659. Id. ¶¶ 42-43. This arrangement provided security to union members without creating a closed shop, and gained at least a limited recognition of local jurisdiction from employers who were free to disregard the IATSE jurisdictional rules. Such an accommodation falls well within the discretion a union may exercise in bargaining for its members, and plaintiff has offered no evidence to rebut this showing of good faith. Therefore, unless IATSE breached its own constitution in striking this bargain, no issue of fact will preclude granting defendants summary judgment on the duty of fair representation claim.
Plaintiff alleges several constitutional restraints on IATSE in its claims. Article Twenty-one establishes the means for locals to protect their jurisdiction. Section 7 of that article provides:
No member of this Alliance may accept a position without first obtaining a working card from his local union. Such working cards shall confer upon the recipients the privilege to work within the territory over which the issuing local union enjoys jurisdiction.
All members of this Alliance operating under local or Alliance working cards must confine their work directly to that territory over which their particular local union enjoys jurisdiction unless permission to work in the jurisdiction of a sister local union be first secured in writing from the local union enjoying such jurisdiction. Any member violating this provision shall incur a fine of not less than One Hundred Dollars ($100.00) and/or expulsion.
Section 9 provides the means of enforcement: "Any member who refuses to withdraw immediately from the jurisdiction of a sister local union when so ordered by the local union of which he is a member shall, upon being found guilty thereof, be subject to fine, suspension or expulsion." Finally, Article Nineteen, § 21 establishes an internal means for resolving jurisdictional disputes:
If any affiliated local union shall have a grievance against another affiliated local union, or if there shall be a disagreement between local unions respecting their respective jurisdictions, membership or policies, such grievances or disputes shall be referred by the local unions to the International President for his decision and his decision shall be binding upon the local unions involved.
These provisions together provide a set of rules for protecting a local's jurisdiction. But they set forth a scheme that assures each local far less protection than plaintiffs claim in this suit. Article Twenty-one, § 7, prohibits the violation of jurisdictional limits, it is true. But the IATSE constitution makes enforcement of its general prohibition contingent upon intra-union agreement and cooperation. Violations remain unenforceable until under § 9 a member refuses to obey an order from the member's own local union to withdraw. Accordingly, Local 644 must initially look to Local 659 to order its own members to withdraw from Local 644 territory, and to penalize those members that disobey such orders. IATSE Const. art. XXI, § 9.
The only other mechanism for enforcement of the constitution's jurisdictional provisions is Article Nineteen, § 21, which directs jurisdictional grievances among locals to the IATSE President and accords the President broad discretion in making binding decisions. Presumably the President is to balance the rights of locals under the *1339 constitution against the practical constraints posed by forces external to the union. Other provisions of the IATSE constitution reinforce this broad discretion by granting the President extraordinary powers, including the authority to make binding decisions as to the meaning of all provisions in the union's constitution and bylaws, and the power to issue or authorize "special contracts" permitting travelling attractions. Art. 7, §§ 6 & 11.
In keeping with "the general congressional policy to allow unions great latitude in resolving their own internal controversies," Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964), and the broad discretion reposed in the IATSE President, a review of the President's jurisdictional decisions is limited solely to assessing their reasonableness. If President Diehl's refusal to enjoin Local 659's jurisdictional encroachments under the Basic Agreement has a rational basis in a reasonable construction of the constitution, this Court is without power to disturb his decision. See, e.g., Local 657, United Brotherhood of Carpenters v. Sidell, 552 F.2d 1250, 1257 (7th Cir.1977) (en banc); Truck Drivers Union, Local 42 v. International Brotherhood of Teamsters, 482 F.Supp. 266, 272 (D.Mass.1979).
Diehl has established a rational basis for the disputed terms of the Basic Agreement, and has set forth sound reasons for refusing to take punitive action against Local 659 or its members or otherwise becoming involved in the jurisdictional dispute. Without a means of imposing the requirements of the IATSE constitution on the producers, and with the apparent antagonism of the employers to these requirements, Mr. Diehl reasonably exercised his discretionary power by interpreting the constitution so as to pursue a course of encouraging the locals to resolve jurisdictional conflicts by internal agreements. This has in fact been the pattern for jurisdictional dispute resolution within this union since its inception, and it is the procedure implicitly anticipated by the constitution's enforcement provisions. Thus, defendants are granted summary judgment on plaintiffs' contract claim.

III. Declaratory Relief.

Plaintiffs, in addition to seeking affirmative relief, seek a judgment, under 28 U.S.C. § 2201 (1976), declaring "the rights and obligations of the parties in connection with the enforcement of the geographic jurisdiction of Local 644" and finding "that IATSE has breached its duty of fair representation to the members of Local 644." See Complaint at ¶ 26.
Plaintiffs are entitled to no such declaration with respect to the constitutional claim discussed above. The duty of fair representation also requires, however, that the International not treat any faction or segment of its membership with hostility or discrimination in negotiating a contract. See Smith v. Hussmann Refrigerator Co., 619 F.2d 1229, 1237 (8th Cir.1980); Doby v. Safeway Stores, Inc., 523 F.Supp. 1162, 1167 (E.D.Va.1981). At oral argument on April 25, 1983, the Court discussed with the parties whether the International had been remiss in its duty in one particular respect. In negotiating the Basic Agreement, with its seniority roster, IATSE supplied Local 659 with an effective means to protect its geographic jurisdiction. The mechanics of the roster system, which credits work toward seniority only when performed within Local 659's jurisdiction, effectively preclude Local 644 members from gaining seniority status and employment under the Basic Agreement. Moreover, Local 659 has used its market leverage to ensure adherence to the roster system by producer signatories of the Basic Agreement who enter its jurisdiction to film even small segments of films originating on the East Coast, and has required such producers to replace Local 644 members on camera crews with roster members when entering Local 659's jurisdiction. See, e.g., Deen Affidavit ¶¶ 8-11 & Ex. 3-12 (Mar. 8, 1983). Local 644 has no reciprocal means to protect its jurisdiction. It has no agreement by which it can compel producers to fire Local 659 camera crew members and employ its own members when filming in its jurisdiction.
*1340 IATSE is well aware of the unequal power its locals exert and of Local 644's repeated efforts before the National Labor Relations Board ("NLRB") and within the International to enforce its members' right to be free from Local 659 pressure when working on the West Coast. The NLRB is not the appropriate body to monitor equality among locals; indeed, it has no duty to enforce or take cognizance of the IATSE constitutional provisions and has dismissed Local 644's claims because the roster system is an appropriate means of allocating work under the federal labor laws. Only IATSE bears a duty to ensure equal treatment of its locals, as guaranteed by the IATSE constitution. The duty of fair representation requires IATSE to ensure that Local 659, operating under a collective bargaining agreement that IATSE negotiated, not use its market power, in tandem with that agreement, to impose its hiring will on producers without affording Local 644 a similar means of protecting its members.
The parties have filed supplemental papers to clarify this issue. These submissions make clear that IATSE has adequately performed its duty and that Local 644 must continue to seek relief within the International or through a separate collective bargaining agreement with employers within its jurisdiction.
As early as 1952 IATSE offered to act as the exclusive bargaining agent for the East Coast locals to negotiate an agreement patterned after the Basic Agreement. See Diehl Affidavit ¶ 17 (May 9, 1983). Such an agreement would offer a means of protecting Local 644's jurisdiction, and for imposing economic leverage on recalcitrant producers. The East Coast locals declined this invitation. They were unwilling to compromise their independence and bargaining autonomy to the general needs of East Coast locals as perceived and negotiated by IATSE. Id. ¶¶ 18-22 & accompanying Exhibits. As recently as 1981 IATSE repeated its offer without success. Id. ¶¶ 25-29. These IATSE actions satisfy its duty in the absence of positive suggestions by East Coast locals. The International cannot unilaterally impose an exception to the hiring provisions of the Basic Agreement that would allow traveling companies employing Local 644 crews to continue to employ those crews when they enter the West Coast area. Such an exception would use union membership as a hiring criterion, allowing a member of Local 644 who is not on the roster to gain employment before someone on the roster, and would violate the closed shop provisions of the Act. The solution proposed by IATSE is both lawful and would eliminate any disparity in authority between West and East Coast locals. Plaintiff must establish that it is attempting to obtain power similar to that conferred by the West Coast roster system and that IATSE is refusing to cooperate and assist it in accomplishing this objective, before it can credibly assert that IATSE has breached its duty to be fair and impartial. Absent such a showing, the courts are not free to fashion remedies to mitigate employment inequalities among union members. If IATSE fails to honor its commitment to use its best efforts in good faith to obtain for plaintiff a collective bargaining agreement which parallels the jurisdictional protection the Basic Agreement affords Local 659, then plaintiff may assert a breach of duty of fair representation before this Court, which retains jurisdiction for that purpose. On this record, however, defendants are granted summary judgment, without costs.
SO ORDERED.