**Raymond SAXTON, Plaintiff,**

v.

**GENERAL MOTORS CORP. et al., Defendants.**

**Civ. A. No. C82–573Y.**

United States District Court, N.D. Ohio, E.D.

Dec. 20, 1983.

Alan Belkin, Cleveland, Ohio, for plaintiff.

Clair E. Dickinson, Cleveland, Ohio, Ralph O. Jones, Asst. Gen. Counsel, Detroit, Mich., William P. Bobulsky, Ashtabula, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

In this suit for violation of the collective bargaining agreement and breach of the duty of fair representation, this Court is asked to decide whether a union member's decision to write a letter to his international union instead of pursuing his local union internal grievance procedures tolls the statute of limitations on his claim until the international union replies to the letter. Pending before the Court are separate motions for summary judgment filed by the defendant employer and by the defendant unions. Upon consideration, the motions are granted.

Jurisdiction is proper pursuant to 29 U.S.C. § 185(a) (Section 301 of the National Labor Relations Act, as amended) and 28 U.S.C. §§ 1331 and 1337.

## FACTS

Plaintiff Raymond Saxton is a journeyman tool and die maker who unsuccessfully applied for indenture in defendant General Motor's (GM) electrical trades apprenticeship program. Although he received the highest test score of all other applicants for the apprenticeship program, he was not selected for indenture because of a provision in the collective bargaining agreement (Paragraph 131) which allows GM to bypass qualified applicants who are already in a trade in which persons are needed. GM says it exercised this option with Saxton because it needed tool and die makers, and was, in fact, adding more people to the tool and die apprenticeship program. Saxton learned that he had not been selected for the electrical apprenticeship sometime around March 23, 1981. He was disappointed with this decision and discussed it with responsible GM officials, including a lawyer and personnel director, who ultimately affirmed GM's interpretation and application of Paragraph 131.

Saxton next discussed the matter with Frank Vicola and Jim Stanfinger, his repre-

sentatives in defendant United Aerospace & Agricultural Implement Workers of America, Local 1714 ("Local"), but Saxton did not file a written grievance. This conversation occurred within approximately one month of March 23, 1981. Some time later,[1] Vicola told Saxton that the Union would not write a grievance for him. Vicola advised Saxton that he could follow the internal appeals procedures provided for by the Union.

Saxton apparently was not interested in pursuing a grievance, and Vicola suggested Saxton write a letter to defendant International Union, United Automobile Aerospace & Agricultural Implement Workers of America ("International"). On August 10, 1981, Saxton wrote a seven-page letter to International Representative Lester Bryan in which Saxton comprehensively detailed his efforts to be indentured in the electrical trades apprenticeship. Bryan advised Saxton, in a letter dated August 18, 1981, that his inquiry had been forwarded to Joe Malotke, the international representative for Saxton's region. Malotke wrote Saxton, on September 21, 1981, to inform him that it would take some time for Malotke to respond to Saxton's lengthy and multi-topic letter. On January 4, 1981, Malotke responded to the substance of Saxton's letter and explained that, under Paragraph 131 of the UAW–GM National Agreement, Saxton did not have any right to be selected into the electrical trade apprenticeship.

Saxton filed the instant suit on March 8, 1982, almost a year after he had been bypassed for the apprenticeship he now seeks. GM and the Local and International Union move for summary judgment based, in part, on the grounds that Saxton's suit is barred by the statute of limitations and that he failed to exhaust internal union appeal remedies.

## CONCLUSIONS OF LAW

### I. Statute of Limitations

All parties agree that the applicable statute of limitations is the six-month period

---

1. The exact date is not indicated in the record. Saxton states it was a few months later, and the

Union does not indicate otherwise, contending only that it was not later than August 10, 1981.

delineated in § 10(b) of the Labor Management Relations Act. *DelCostello v. International Brotherhood of Teamsters, et al.,* — U.S. —, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). They do not agree on when that six-month period begins to run.

The unions contend that the statute began to run, at the latest, on the date when Saxton knew that the Local would not write a grievance. They are willing to accept August 10, 1981, the date on which Saxton wrote his letter to the International, as the definitive point in time. Since Saxton did not file suit until seven months later, both the unions and GM claim the suit is time-barred.

Saxton claims the statute of limitations began to run on January 4, 1982, the date when the International's representative finally responded to him. Saxton relies on this date for two reasons: 1) his Local representative suggested he write the letter to the International; and 2) the Local had refused to write a grievance, indicating that pursuit of the grievance process would have been futile.

### A. *Union Representative Suggested Letter*

■ The record indicates that the Union had a number of established procedures for members to grieve alleged company wrongs. *See,* Affidavits of Carolyn Forrest, David Y. Klein, and William V. Colbath. The record also indicates that Saxton was aware of the formal union appeal procedure and that, during their discussion in the cafeteria on or before August 10, 1981, Vicola advised Saxton of his right to implement the appeals process. Saxton's own sworn deposition testimony reveals that "I wasn't at that time, I don't believe, specifically looking for a hard line or a grievance way of handling this." There can be no doubt that Saxton deliberately chose not to invoke the established union grievance procedures. Saxton's lengthy letter, albeit an admirable and nonadversarial effort, was an informal method of his own devising which was outside any established union procedure.

### B. *Alleged Futility of Grievance Process*

Saxton contends that January 4, 1982 was the date on which his exhaustion obligation was satisfied, and the date from which the statute of limitations should run, because it would have been futile for him to challenge the Local's decision through an internal union appeal. Saxton's argument amounts to asking this Court to treat Saxton's informal letter-writing as an acceptable alternative to the established union appeals procedures which Saxton elected not to follow. The argument suggests a dangerous and unworkable precedent that would wreak havoc in the field of union dispute resolution and clearly conflicts with the national policy favoring speedy resolution of labor disputes. *See, DelCostello, supra* 103 S.Ct. at 2291; *United Parcel Service v. Mitchell,* 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *Auto Workers v. Hoosier Cardinal Corporation,* 383 U.S. 696, 707, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966).

Saxton's argument on this point crosses into the field of law governing exhaustion of internal union remedies; therefore the Court will consider the arguments jointly.

■ Ordinarily an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *DelCostello, supra* 103 S.Ct. at 2290, citing *Republic Steel Corporation v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, an employee who bypasses established appeal procedures may be excused if the internal procedures are inadequate to effect the relief sought. *Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, et al.,* 451 U.S. 679, 680, 101 S.Ct. 2088, 2090, 68 L.Ed.2d 538 (1981). In recognizing an exception to the general requirement, the *Clayton* court stated that "courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton, supra* at

689, 101 S.Ct. at 2095. At least three factors are relevant:

> ... first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.*

### (1) *Fair Hearing*

■ Saxton has presented no evidence to suggest that union officials were hostile to him or that a fair hearing was impossible. Rather, the record suggests that Saxton had a good relationship with his union representatives and was able to amicably discuss his situation with all he approached.

### (2) *Inadequate Union Procedures*

■ The affidavits and deposition testimony indubitably establish that the union had grievance steps and several layers of appeals procedures by which a union member could challenge unsatisfactory results. In the instant case, unlike *Clayton*, the union did not prejudice the union member's rights by failing to advise him of an unfavorable decision until after the time for an appeal of that decision had lapsed. *See Clayton, supra* at 691, 101 S.Ct. at 2096. No avenues had been foreclosed to Saxton, as they had been to Clayton; indeed, Saxton had available to him the very process which the *Clayton* court *presumed* would be adequate:

> ... The UAW informs us that "[s]ome employers and unions have, through collective bargaining, agreed to allow the reinstatement of withdrawn grievances where a union tribunal reverses the union's initial decision. This is true, for example in the current UAW contracts with the major automobile and agricultural implement manufacturers." In such cases, the relief available through the union's internal appeal procedures would presumably be adequate. (Citations omitted)

*Id.* at 691 n. 18, 101 S.Ct. at 2096 n. 18. William Colbath's affidavit reveals that GM and the union had just such an agreement which would have applied to Saxton had he chosen to take advantage of it. Saxton admitted in his deposition that he did not.

> ... Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum.

*Ibid.* at 692, 101 S.Ct. at 2097.

### (3) *Unreasonable Delay*

■ Saxton has presented no evidence that suggests that his own *ad hoc* method of resolving his dispute was speedier or more efficient than the established union internal appeals process. Nor has he suggested that the established procedures would have unreasonably delayed his ability to seek relief in court. His attempt to suggest that the established process is too slow by pointing to the tardiness of Malotke's reply to his August 10, 1981 inquiry is unpersuasive. Because Saxton's letter-writing approach was an aberration from the norm, there was no particular time limit within which the International was required to respond. Procedures without time limits are uncharacteristic of the grievance and arbitration process. The need for time limitations is self-evident in a procedure which is intended to achieve prompt and speedy resolution of disagreements. Saxton's attempt to analogize a process of his own making with an established method which is routinely applied, and arguably fine-tuned by repeated implementation, is inapposite.

Clearly, the statute of limitations would have been tolled while Saxton availed himself of established internal union appeals.

Saxton's letter-writing cannot be considered a justifiable alternative and this Court cannot, in good conscience, allow the statute of limitations to be tolled whenever a union member decides to attempt his own informal method of changing the minds of the decision-makers. Such a rule would lead to chaos, would be inconsistent with national labor policy, and would be impossible of equitable and even-handed application.

■ Saxton's claim is time-barred under § 10(b). The six month statute of limitations applies to both the union and the employer. *DelCostello, supra.* Accordingly, the motions for summary judgment must be granted in favor of GM and the Local and International Unions. Therefore the suit is dismissed.

IT IS SO ORDERED.