**Cynthia CANADY, Plaintiff,**

v.

**UAW LOCAL 31, Defendant.**

No. CIV.A. 03–2395CM.

United States District Court, D. Kansas.

Oct. 25, 2004.

See, also, 2004 WL 3322372.

Cynthia E. Canady, Kansas City, MO, pro se.

Bruce C. Jackson, Jr., Arnold, Newbold, Winter, Jackson and Jocoby, PC, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Cynthia Canady has brought this lawsuit against United Auto Workers Local 31(UAW),[1] alleging race and age discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA). Specifically, plaintiff alleges UAW violated these laws when it failed to represent plaintiff with regard to her change in employment status. This matter is before the court on Defendant UAW's Motion for Summary Judgment (Doc. 14).

Plaintiff also filed a Motion for Leave to File Surreply (Doc. 17). Along with the motion, plaintiff attached her proposed surreply. The court hereby grants plaintiff's motion (Doc. 17) and will, accordingly, take in to account those contentions contained in plaintiff's sur reply brief.

### I. Facts

As a preliminary matter, the court notes that plaintiff's response brief[2] fails to adequately respond to, much less controvert, UAW's statement of facts. Plaintiff simply sets forth twenty eight factual assertions, most of which contain no citation to the record. Local Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable,

1. Plaintiff also filed suit in this court against General Motors Corporation (GM) in *Canady v. General Motors Corporation*, Case No. 03–2326.

2. The court notes that plaintiff in fact failed to file a response brief in the instant captioned case. However, plaintiff responded to GM's Motion for Summary Judgment in Case. No. 03–2326, wherein plaintiff asserted contentions regarding UAW. The court will therefore construe plaintiff's brief filed in Case. No. 03–2326 as a response to the summary judgment motion at issue here.

shall state the number of the movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiff has failed to comply with these requirements. Thus, where allegedly disputed facts are not directly controverted by evidence contained in the record, the court considers those facts uncontroverted pursuant to Federal Rule of Civil Procedure 56. However, the court will deem UAW's facts controverted to the extent that plaintiff's own facts fairly meet the substance of UAW's statement of facts and are supported by competent evidence.

Plaintiff is African–American and was born on June 8, 1939. Plaintiff began working as an hourly employee for GM on September 8, 1972 in the Leeds plant located in Kansas City, Missouri. While employed at the Leeds plant, plaintiff was a member of the International Union, UAW and UAW Local 93. GM closed the Leeds plant in April 1987, and plaintiff was laid off by GM. In May 1987, plaintiff filed a workers' compensation claim alleging a work-related injury to her back. Plaintiff applied for and received social security disability benefits from the government from May 1987 through January 1997. Plaintiff applied for and received a disability benefits package from GM based on her back injury.

Pursuant to the terms of the applicable collective bargaining agreement, GM recalled plaintiff to work at GM's Fairfax assembly plant in Kansas City, Kansas in September 1994. At that time, plaintiff became a member of UAW Local 31. On March 10, 1998, plaintiff reported that she slipped on ice in the plant parking lot, injuring her hip and pelvic regions. Plaintiff filed a workers' compensation claim related to this injury.

Plaintiff returned to work on May 11, 1998 and was referred to the Fairfax plant medical department for assignment.[3] GM assigned plaintiff to a light duty position from May 11, 1998 until September 1998. After plaintiff completed her light duty assignment, plaintiff's supervisor assigned her to jobs within her medical restrictions. However, plaintiff complained to Joe Biondi, ADAPT Representative, that she was physically unable to work in the positions assigned by her supervisor. Biondi had the plant medical director review the job assignments and, based upon that review, informed plaintiff that the positions complied with her medical restrictions.

On April 23, 1999, a GM supervisor notified plaintiff she was subject to disciplinary action for faulty workmanship. Instead of receiving the punishment, plaintiff walked off her job, without permission from any manager or supervisor, and did not return to the Fairfax plant until October 1, 2001.

The same day plaintiff walked off the job, plaintiff went to Dr. Fred Fayne, plaintiff's psychiatrist, and he submitted documentation to GM releasing plaintiff from work on April 23, 1999 and stating that she should not return to work due to stress. Dr. Fayne diagnosed plaintiff as having major depression and did not release plaintiff to return to work based on her mental health restrictions. GM then referred plaintiff to Dr. Fernando Egea for a second opinion. Dr. Egea diagnosed

---

**3.** Pursuant to GM's workers' compensation policy, employees with work-related injuries are sent to the plant medical department for verification of their restrictions. Verification is then forwarded to an Accommodating Dis–Abled People in Transition ("ADAPT") placement representative. Through ADAPT, the Fairfax plant attempts to place employees with injuries or impairments in jobs that meet their restrictions. If ADAPT is unable to place an employee in a position that meets their restrictions, the employee is placed on a paid medical leave of absence.

plaintiff with "bipolar disorder with depression and anxiety."

On or about July 13, 1999, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging GM refused to accommodate her medical restrictions because of her race, gender and an alleged disability. On September 6, 2001, the Kansas Human Rights Commission (KHRC) issued a no probable cause determination, and the EEOC issued a Notice of Right to Sue. Plaintiff did not institute any legal proceedings based upon this Notice of Right to Sue.

On or about September 9, 2001, without communicating with any manager or supervisor at the Fairfax facility, plaintiff completed and signed an "Application for Total and Permanent Disability Benefits." In her application, plaintiff certified that she was unable to return to work at GM or any other employer because of "stress." Plaintiff then met with the plant medical department on October 1, 2001, regarding plaintiff's return to work. The plant medical department deferred any decision related to returning plaintiff to work until January 2002.

In the mean time, on November 1, 2001, Dr. Fayne provided GM with a "Statement of Employee's Physician for Total and Permanent Disability Benefits." Dr. Fayne certified that plaintiff was permanently and totally disabled from working because of her "major depression." Dr. Fayne also certified that plaintiff would "never" be able to return to gainful employment of any kind.

On December 20, 2001, the plant medical director agreed with Dr. Fayne's findings, and plaintiff was authorized to receive total and permanent disability benefits from GM from April 23, 1999 through the present. Plaintiff also applied for and received social security disability benefits from the government beginning on April 23, 1999 and continuing today.

Plaintiff returned to the GM facility for the last time on January 1, 2002. At that time, plaintiff was informed by the plant medical department and ADAPT that she was not eligible to return to work due to her voluntary application for medical retirement benefits. Plaintiff has not returned to the Fairfax plant or spoken with GM management since that time.

On November 6, 2002, plaintiff filed a Charge of Discrimination with the EEOC.

**Grievance Procedure at GM**

GM and UAW are parties to a national collective bargaining agreement, and Local 31 and GM are parties to a local collective bargaining agreement. Both collective bargaining agreements govern the hours, wages, working conditions, and other terms and conditions of employment of bargaining unit employees employed at GM's Fairfax plant, including plaintiff.

Plaintiff was subject to the union's procedural process for handling grievances, which is as follows: The first step is for the employee to call the employee's committee person. The committee person handles the call, and that person either settles the dispute or writes the grievance and takes it forward. Next, at the step and a half, which is handled either by a seasoned committee person or a zone committee person, the grievance can be resolved. If not resolved, then a grievance goes to the second step, which is handled by the zone committee person. After that step, there is a step two and a half, which is handled by the shop chairman. A third step grievance is handled by the UAW International servicing representative, Wilbert Neal.

A grievance claiming discrimination is referred to as a 6A grievance. The responsibility to investigate 6A grievances

falls upon the UAW Civil Rights Committee. After the UAW Civil Rights Committee investigates a 6A grievance, the investigator fills out the form and turns it into the Union's secretary. Then the UAW Civil Rights Committee investigates a 6A grievance, the grievance goes to the second step of the discipline procedure if necessary.

There is no evidence in the record that plaintiff ever filed an internal union charge against officers or committee persons at UAW, that plaintiff ever requested a grievance be filed and that said request was rejected by UAW,[4] or that plaintiff filed a 6A grievance claiming age or race discrimination.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

The court acknowledges that plaintiff appears pro se and her response

---

4. There is testimony in the record that plaintiff wrote a letter in June 1999 regarding complaints involving the ADAPT program and provided the letter to Neal and other union officials. However, at the time she purportedly wrote the letter, plaintiff was no longer working at the plant.

is entitled to a somewhat less stringent standard than a response filed by a licensed attorney. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). However, this does not excuse plaintiff from the burden of coming forward with evidence to support her claims as required by the Federal Rules of Civil Procedure and the local rules of this court. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 649 (10th Cir.1988). Even a pro se plaintiff must present some "specific factual support" for her allegations. *Id.*

## III. Discussion

■■■ Plaintiff claims that the union disregarded her complaints and failed to represent or assist her with regard to her complaints of discriminatory and unfair treatment by her employer. A union's deliberate refusal to file grievable discrimination claims violates Title VII. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 667–69, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). To establish a prima facie case against a union for failing to file a grievance, plaintiff must demonstrate that (1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) there was some indication that the union's actions were motivated by discriminatory animus. *York v. Am. Tel. & Tel. Co.,* 95 F.3d 948, 955–56 (10th Cir.1996).

### A. Exhaustion of Administrative Remedies

■■■ Exhaustion of administrative remedies is a prerequisite to instituting a Title VII or ADEA action in federal court. *Khader v. Aspin,* 1 F.3d 968, 970 (10th Cir.1993). A complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event to ensure

that the claim may be filed with the EEOC within the 300–day limit set forth in Title VII. *E.E.O.C. v. Commercial Office Prods. Co.,* 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988); *Waller v. Consol. Freightways Corp.,* 767 F.Supp. 1548, 1558 (D.Kan.1991). In a deferral state such as Kansas, a plaintiff must file Title VII and ADEA discrimination charges within 300 days after the alleged discriminatory act occurred. 42 U.S.C. § 2000e–5(e)(1) (Title VII); 29 U.S.C..§ 626(d)(2) (ADEA); *Peterson v. City of Wichita,* 888 F.2d 1307, 1308 (10th Cir.1989).

■■■ The Supreme Court has held that the trigger of the limitations period in which to file an EEOC charge is the date an employee first learns of the alleged discrimination, even if the effects of the discrimination become more painful at a later date. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431, (1980); see *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994) (holding discrimination claim accrues on the date an employee is notified of adverse employment decision).

In this case, plaintiff alleges discriminatory conduct on the part of UAW dating back as far as 1999. Plaintiff last worked at GM on April 23, 1999. Plaintiff complained of problems with her job placement and return to work in a June 1999 letter to Wilbert Neal, Jim Russell and John Melton. Plaintiff applied for total and permanent disability retirement in November 2001, effectively ending her efforts to return to work at GM. This conduct clearly occurred more than 300 days before November 6, 2002, the date plaintiff filed her charge with the EEOC. Any alleged discrimination occurring more than 300 days prior to the date that plaintiff filed her administrative charge is barred as untimely.

## B. Exhaustion of Grievance Procedures

In addition to the fact that plaintiff failed to timely file her charge of discrimination, plaintiff also failed to exhaust internal grievance procedures under the applicable collective bargaining agreements.

Ordinarily, an employee must make use of a contract grievance procedure before seeking judicial intervention. *See, e.g., Moore v. General Motors Corp.,* 739 F.2d 311, 317 (8th Cir.1984); *Sutton v. Southwest Forest Indus., Inc.,* 628 F.Supp. 1034, 1035 (D.Kan.1985); *Wynn v. Boeing Military Airplane Co.,* 595 F.Supp. 727, 728 (D.Kan.1984). However, courts have discretion to decide whether to require exhaustion of internal union procedures. *Clayton v. Int'l Union, United Auto. Workers,* 451 U.S. 679, 689, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In exercising this discretion, at least three factors should be considered: first, whether union officials are so hostile to the employee that she could not hope to obtain a fair hearing on her claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award her full relief; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Id.*

In applying the factors to the present case, the court first points out that there is no evidence in the record that any union official treated plaintiff with hostility, a fact to which plaintiff testified at her deposition. Second, the collective bargaining agreement between GM and UAW provides that a grievance which is improperly effected by union representatives may be reinstated. Third, plaintiff does not contend that exhaustion of internal procedures would unreasonably delay her opportunity to obtain a judicial hearing on the merits.

UAW's constitution provides for a mandatory procedural mechanism to challenge a local unit's actions. A two-step appeals procedure is available for members who remain dissatisfied. There is absolutely no indication that plaintiff has attempted to appeal the decision of union personnel at the local level. Indeed, plaintiff has admittedly never filed an appeal or alleged a failure of UAW Local 31 to process any grievance. Additionally, it should be noted that plaintiff has never filed any internal union charges against representatives of the Local 31 executive board or any officer of the International Union pursuant to Article 31 of the UAW constitution alleging discrimination.

When a contractual grievance procedure is mandatory, an aggrieved employee must at least attempt to use and exhaust that procedure before seeking judicial review of her claim. *Atkins v. Louisville & Nashville R. Co.,* 819 F.2d 644, 649 (6th Cir.1987) (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). Since plaintiff has not even attempted to engage in UAW's internal appeals process, the court grants defendant's summary judgment motion with regard to a breach of duty of fair representation on the ground that plaintiff has failed to exhaust grievance procedures.

**IT IS THEREFORE ORDERED** that Defendant UAW's Motion for Summary Judgment (Doc. 14) is granted in its entirety.