NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3774
_____

TERRY ROE, an Individual Pseudonym,
                                    Appellant
                    v.

EDWARD DIAMOND, Individually and as Manager Cardiac
Services of JSUMC; MERIDIAN HEALTH SYSTEMS INC.;
MERIDIAN HEALTH INC; MERIDIAN HOSPITALS CORP.;
MERIDIAN HEALTH; DONNA M. CUSSON, Individually and as
Assistant Nurse Manager Invasive Cardiology of JSUMC; JERSEY
SHORE UNIVERSITY MEDICAL CENTER, JSUMC; ERICKA D.
CLARK DISTANISLAO, Individually and as Staff Nurse and
Preceptor Invasive Cardiology of JSUMC; JENNIFER S. LOVEY,
Individually and as Staff Nurse Preceptor Invasive Cardiology of
JSUMC; HEALTH PROFESSIONALS AND ALLIED
EMPLOYEES, AFT/AFL-CIO HPAE; HPAE LOCAL, #5058

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 10-cv-06798)
District Judge: Honorable Joel A. Pisano
_____

Submitted Under Third Circuit LAR 34.1(a)
April 13, 2012

Jones, II, *District Judge.*

Terry Roe brought suit against Defendants Jersey Shore University Medical Center ("JSUMC"), Meridian Health Systems, Inc., Meridian Health, Inc., Meridian Hospitals Corp. and Meridian Health (collectively, "the Hospital"), Edward Diamond, Donna Cusson, Ericka Distanislao, and Jennifer Lovey (collectively, "Individual Defendants"), and Health Professionals and Allied Employees ("HPAE"), AFT/AFL-CIO, and HPAE Local #5058 (collectively, "the Union"), alleging numerous labor and employment violations. Roe appeals a decision from the United States District Court for the District of New Jersey granting Defendants' motions to dismiss Roe's claims under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), and Section 7 of the National Labor Relations Act, 28 U.S.C. § 157 ("NLRA"), following JSUMC's termination of Roe from his position as a nurse in JSUMC's Cardiac Catheterization Laboratory. The District Court declined to exercise supplemental jurisdiction over Roe's remaining state law claims.

_____

[*]The Honorable C. Darnell Jones, II, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

For the reasons discussed below, we affirm-in-part and reverse-in-part and remand for further proceedings.

## I.    BACKGROUND

We write principally for the benefit of the parties and recite only the essential facts and procedural history.

### A.    Roe's Employment

Terry Roe began his employment at JSUMC's Cardiac Catheterization Laboratory in August 2010. During the hospital-wide orientation program for new nurses on August 10, 2010, Roe received a copy of the Collective Bargaining Agreement ("CBA") between the Union and JSUMC.

Plaintiff commenced working in the Cardiac Catheterization Laboratory under Defendant Distanislao as part of JSUMC's Preceptor Program. After Roe complained about Distanislao, Roe was assigned Defendant Lovey as his new preceptor for the remainder of the Preceptor Program. Roe alleges that their relationship was positive and amicable until their final twenty-four hours together. At that point, Lovey's attitude suddenly changed and Lovey told Roe to perform tasks that he was not previously required to do. That same day, Defendant Cusson informed Roe that Lovey had reported deficiencies in Roe's work. Roe was instructed that if his work did not improve, he would be terminated at the end of the ninety-day "probationary period," as provided in the CBA.

3

JSUMC ultimately terminated Roe on October 18, 2010, during his probationary period. Following his termination, Roe contacted the Union representative to pursue any remedy under the CBA. The Union representative, Frederick DeLuca, filed a grievance on Roe's behalf, which JSUMC denied. DeLuca informed Roe that the Union would not pursue arbitration, and explained that the Union's past pattern and practice, consistent with "the way the Union and Corporate Defendants 'read' the CBA" was that "no procedural nor substantive job protections apply" until after the ninety-day probationary period.

B.     The CBA

JSUMC and the Union are parties to a CBA, which gives JSUMC certain rights regarding the discipline and discharge of covered employees. Under the CBA, the Union can contest any discharge or disciplinary action, and the parties consent to arbitrate any "grievance" that remains unresolved after the defined "grievance procedure." (App. 120). Because Roe's claims require interpretation of the CBA, several key CBA provisions are discussed herein.

The CBA provides in relevant part:

**1. Agreement Scope**

This Agreement *covers all employees . . . and includes permanent full-time or permanent part-time employees as defined in Article Four*, employed as a Graduate or Registered Nurse, Certified Registered Nurse Anesthetist, Clinical Nurse Specialist, Nurse Clinician, Nursing Education Instructor *and per diem nurses* (*herein called "employee"*) employed by the Hospital, excluding all other employees including Nurse Managers, Assistant Nurse Managers,

4

Nurse Practitioners, Clinical Nurse Coordinators and other Supervisors as defined by the [NLRA].

\*\*\*\*\*\*

## 4. Employee Status

 . . . .

*4.01 Status I- Full Time Permanent:* An employee who is employed on a regular basis to work forty (40) hours per work week . . . .

*4.02 Status II- Part Time Permanent*: An employee who is employed on a regular basis to work twenty (20) but less than thirty-six (36) hours per week.

*4.03 Status III- Part Time Permanent*: An employee who is employed on a regular basis to work nineteen (19) or fewer hours per work week.

*4.04 Status IV- Per Diem:* An employee who is employed as needed by the Hospital and subject to the employee's availability with no guarantee of hours. Such employee shall be part of the bargaining unit and as such be entitled to seniority and all rights and benefits as outlined in the contract . . .

*4.05 Status V- Temporary*: An employee who is employed full time or part time for a limited period of time, no greater than six (6) months in any calendar year . . . .

*4.08 Probationary Period*: All employees regardless of status will be on probation for ninety (90) calendar days following employment . . . .

\*\*\*\*\*\*

## 12. Discipline and Discharge

*12.01* The Hospital shall reserve the right to discipline, suspend or discharge any employee *only for just cause* . . . .

*12.02* The designated Union representative, the Union office and the employee involved shall be advised, in writing, of any discharge, suspension or disciplinary action. A copy of the notice given to the employee shall be mailed to the Union within twenty-four (24) hours . . . .

\*\*\*\*\*\*

## 13. Grievance Procedure

. . . .

*13.02 Step I- Chief Nurse Executive:* Grievances shall be raised by the employee and /or union representative with the Chief Nurse Executive or his/her designee in writing within ten (10) working days from occurrence giving rise to the grievance or within ten (10) working days from the time the employee should have reasonably been aware of such occurrence, whichever is later. If the matter is not resolved within five (5) working days of presentation of the grievance, it may be taken to Step II. The employee, at his/her request, shall have the right to have a Union representative present.

*13.03 Step II- Vice President of Human Resources:* The employee/Union shall forward the grievance to the Vice President of Human Resources or his/her designee within five (5) working days after the receipt of the written response from the Department Manager. The matter will be investigated and meeting scheduled within ten (10) working days after the receipt of the written appeal. A written response to the grievance shall be given within five (5) working days after the meeting and returned to the grieving party. If there is no resolution, the grieving party may progress to Step III.

*13.04 Step III- Arbitration:* The grievance may be submitted to arbitration by the Union within twenty (20) working days from the receipt of the answer in Step II . . . .

******

## 20. Scope of Bargaining

The Hospital and the Union acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject matter not removed by law from the area of collective bargaining and that the understanding and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement, ***which constitutes the full and complete agreement between the parties notwithstanding any oral agreement or any past practices, policies or procedures . . . .***

(*Id.* at 73-123 (emphasis added).)

C.    Roe's Lawsuit

In Roe's Amended Complaint, he alleges seven causes of action: (1) a hybrid claim under Section 301 of the LMRA, 29 U.S.C. § 185, alleging that the Hospital breached the CBA and that the Union breached its duty of fair representation; (2) a claim under Section 7 of the NLRA, 28 U.S.C. § 157, alleging that the Hospital violated Roe's right to engage in collective bargaining; (3) a claim under the New Jersey Law Against Discrimination against the Hospital, Cusson, and Diamond; (4) a defamation claim against the Hospital and Individual Defendants; (5) breach of contract claims against the Hospital; (6) a claim under New Jersey's Conscientious Employee Protection Act against the Hospital, Cusson, and Diamond; and (7) a claim for tortious interference with prospective economic advantage against the Hospital and the Individual Defendants.

The District Court granted Defendants' Motions to Dismiss on October 5, 2011. With respect to Roe's hybrid claim under the LMRA, the District Court held that Roe failed to state a claim under the LMRA because he had not pled sufficient facts to show that the Union breached its duty of fair representation. Because Roe did not demonstrate that the Union breached its duty of fair representation, which is a necessary predicate in a hybrid Section 301 claim, the District Court dismissed Roe's corresponding Section 301 claim against the Hospital. The District Court also held that Roe's NLRA claim was preempted and subject to the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Finally, the District Court declined to exercise supplemental jurisdiction over Roe's remaining state law claims. *Roe v. Diamond*, Civ. No. 10-6798, 2011 WL 4736353, *passim* (D.N.J. Oct. 6, 2011). This timely appeal followed.

## II. DISCUSSION

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. This Court likewise has appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). We accept as true all well-pled factual allegations and construe the complaint in the light most favorable to the non-moving party. *See Lewis v. Atlas Van Lines, Inc.,* 542 F.3d 403, 405 (3d Cir. 2008).

A. Breach of the Duty of Fair Representation

A union's duty of fair representation is derived from the principle that the law allows a "single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually. . . ." *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 n.14 (1983). Because a collective bargaining agreement otherwise divests individuals of means to protect their individual interests, the duty of fair representation serves as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *See id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). Individuals may sue for breach of a collective bargaining agreement under Section 301 of the LMRA. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 561-62 (1976). Ordinarily, where labor disputes are subject to a compulsory grievance/arbitration

8

process, as in this case, an individual must exhaust all provided-for remedies in the collective bargaining agreement before bringing suit. *See Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.,* 451 U.S. 679, 681 (1981)(citations omitted). Roe's hybrid claim under Section 301 of the LMRA, however, is an exception to this general rule. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983). An employee is not required to exhaust all remedies in the collective bargaining agreement, when, as alleged here, a union, in its representation of the employee in a grievance procedure, has acted in "such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *See id.* at 164. In such an instance, the employee may bring a "hybrid" suit under the LMRA. The Supreme Court has described a hybrid claim as follows:

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent.

*Id.* at 164-65 (citations and internal quotations omitted).

A union's breach of the duty of fair representation is a "necessary condition precedent" to a Section 301 claim against an employer for breach of a collective bargaining agreement. *Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001).

To demonstrate that the Union acted arbitrarily, and thus breached its duty of fair representation, Roe must demonstrate that "in light of the factual and legal landscape at the time of [its] actions, the union's behavior is so far outside a 'wide range of

9

reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). The Union acted "irrationally" when it told Roe that it declined to pursue arbitration on his behalf because of a purported Union "past practice" of considering "probationary" employees as not covered by the CBA. The Union's reliance on its past practices was in direct contravention to the CBA's integration clause, which provides that the CBA "constitutes the full and complete agreement between the parties notwithstanding any agreement or any *past practices, policies or procedures*." (App. 123 (emphasis added)). Acting in reliance on "past practices," the Union's behavior fell outside of the "wide range of reasonableness" and thus breached its duty of fair representation. The contrary findings by the District Court were erroneous.[1]

As further justification for its refusal to take Roe's grievance to arbitration, the Union argued that a "plain reading" of the CBA reveals that the CBA "simply does not apply to probationary employees." (Union Br. 9). The terms of the CBA, however, do not support such an interpretation.[2] Although Article 4.08 of the CBA (the "probation

---

[1]    In addition, the District Court made a factual error in concluding that the Union's reliance on its "longstanding practice . . . as to probationary employees" was within the "wide range of reasonableness as to be []rational." *Roe,* 2011 WL 4736353, at * 5. The District Court stated Roe "acknowledges [that] JSUMC and the Union have a longstanding understanding and established practice that probationary employees are not members of the Union." *Id*. at 4. In his Amended Complaint, however, Roe alleged that the Union representative merely *told* him about that past pattern and practice; Roe did not concede its existence. (App. 44).

[2]    Article One of the CBA states that the CBA "covers all employees . . . and includes permanent full-time or permanent part-time employees as defined in Article Four." (App. 44). Article Four distinguishes between "permanent," "per diem," and "temporary"

clause") provides that "[a]ll employees . . . will be on probation for ninety (90) calendar days following employment," the CBA does not explicitly state that "probationary" employees are not covered by the CBA. (App. 89). Even though the CBA restricts the rights of probationary employees in the receipt of certain fringe benefits (such as vacation time), it is certainly plausible to interpret the CBA as merely restricting "probationary" employees' eligibility for fringe benefits rather than wholly excluding any rights under the CBA.[3] Despite this plausible interpretation that the CBA does not explicitly exclude "probationary employees" from coverage, the District Court nevertheless concluded, that "the Union's justification for not taking Plaintiff's grievance to arbitration finds support in the explicit language of the CBA." Reviewing the evidence in the light most favorable to Roe, as is required at this stage of the proceedings, there is satisfactory evidence to

employees. (*Id.* at 86–87). Whereas the former two categories of employees are "part of the bargaining unit," Article Four does not explicitly provide CBA coverage to "temporary" employees. (*Id.* at 87).

Because "temporary" employees are not covered by the CBA, the Union attempts to argue that all "probationary" employees are "temporary" employees. This is based on a strained and logically flawed interpretation of the CBA. Article Four states that "All employees *regardless of status* will be on probation for ninety (90) calendar days following employment . . . ." (*Id.* at 89). Although "permanent," "per diem," and "temporary" employees are subject to a ninety day probation period pursuant to Article 4, it does not follow every employee is a "temporary" employee during this probation period.

[3] Indeed, the District Court also made a factual error when it determined that Roe "concede[d] [that Union] dues were not in fact deducted from his salary during his employment" to support to Court's conclusion that "the Union's decision not to take Plaintiff's grievance to arbitration [was] consistent with its understanding of probationary employees' rights . . . ." *Roe,* 2011 WL 4736353, at * 4. In fact, in his Amended Complaint, Roe alleged that the "Hospital withheld Union dues from Roe's JSUMC paychecks during his employment." (App. 33).

support a finding of arbitrary conduct in breach of the Union's duty of fair representation. The District Court, by reason of this decision, is now obliged to reach the second prong of the hybrid claim, to wit, Roe's Section 301 claim against the Hospital. [4]

B.      Jurisdiction over NLRA Claims

The District Court properly granted the Hospital's Motion to Dismiss Roe's NLRA claim. "When an activity is arguably subject to [Section] 7 or [Section] 8 of the [NLRA], the . . . federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959). "Preemption . . . is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." *Amalgamated Ass'n of Street, Elec. Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292 (1971). "*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings; accordingly, if a cause of action implicates protected concerted activity under Section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under Section 8 of the NLRA, the cause of action is preempted." *Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999).

---

[4]   Having determined, albeit incorrectly, that Roe failed to establish that the Union breached its duty of fair representation—the "necessary predicate" under a Section 301 hybrid claim—the District Court did not engage in an analysis of Roe's Section 301 claim against the Hospital. *Roe,* 2011 WL 4736353, at * 6 ("Because the necessary predicate in a hybrid § 301 claim is a demonstration that the Union breached its duty of fair representation . . . Plaintiff's § 301 claim against the Hospital Defendants must be dismissed.") (citation omitted).

Roe alleges that the Hospital terminated him because of his efforts to enforce CBA provisions that guaranteed effective Preceptors to new nurses. Because this claim alleges that Roe was terminated for asserting his rights guaranteed by the CBA, it is governed by Sections 7 and 8 of the NLRA and is preempted under *Garmon*. Thus, the District Court properly dismissed the NLRA claim.

C.    Supplemental Jurisdiction

The District Court recognized its discretion to retain jurisdiction over Roe's remaining state-law claims but, having dismissed all of the federal claims, properly declined to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Though the District Court correctly declined to exercise supplemental jurisdiction over the remaining state-law claims, because the federal LMRA claims are reinstated following remand, the state law claims are necessarily reinstated as well.

III.    CONCLUSION

We affirm-in-part the District Court's Order to the extent that it granted the Hospital's Motion to Dismiss Roe's NLRA claim. Because the District Court erroneously concluded that the Union did not breach its duty of fair representation to Roe, we reverse-in-part the District Court's Order to the extent that it granted Defendants' Motions to Dismiss Roe's hybrid claims under the LMRA, and we direct the District Court to reinstate that claim and conduct further proceedings consistent with this opinion.

13